**John Bradford FREEMAN, Jessamine County Property Valuation Administrator, et al., Appellants,**

v.

**ST. ANDREW ORTHODOX CHURCH, INC., Appellee.**

No. 2007–SC–000640–DG.

Supreme Court of Kentucky.

May 21, 2009.

Rehearing Denied Oct. 29, 2009.

Douglas M. Dowell, Department of Revenue, Office of Legal Services, Frankfort, KY, Counsel for Appellants.

David Andrew Owen, Jennifer Sartor Smart, Greenebaum, Doll & McDonald, PLLC, Lexington, KY, Mark Francis Sommer, Greenebaum, Doll & McDonald, PLLC, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

"Render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's." *Matthew* 22:21 (King James).

This cogent principle, set down over 2,000 years ago, is precisely the issue with which we now struggle in interpreting Section 170 of the Kentucky Constitution. It states in pertinent part: "There shall be exempt from taxation ... real property *owned and occupied by,* and personal property both tangible and intangible owned by, institutions of religion ..." (emphasis added).

St. Andrew Orthodox Church, Inc. (hereinafter St. Andrew), with approximately 150 members, is located in Fayette County, Kentucky. There is no question that St. Andrew is a bona fide institution of religion entitled to exemption from ad valorem taxation of real property which it "owns and occupies" as afforded by Section 170 of the Kentucky Constitution. The sole issue before this Court is whether the property attempting to be exempted is, in fact, "owned and occupied" by the church.

On December 10, 2002, St. Andrew purchased property in Jessamine County, Kentucky, consisting of approximately ten acres of land, including two houses, for a purchase price of $630,000.00. The acre-

age was divided into two parcels, each consisting of approximately five acres, with a single family dwelling located on each parcel. It is the stated purpose of the church to build a new, larger facility on this property, as well as to provide for an activity center and other related church facilities as soon as finances will allow. The two houses are rented to individuals for residential purposes, with the rental income being used by the church building fund to service a mortgage on the property.

The tenants of the two residences pay rent of approximately $30,000.00 total each year on two separate leases. The January 2002 lease agreement as to one of the residences allows for the current tenants to sub-lease the property. The tenants are obligated to cut the grass around their houses, while church members mow the rest of the grounds. The property, other than the houses, is leased intermittently. It is also used for church activities, including an annual church picnic on the property. Apparently, from the evidence, St. Andrew publicly represents the property as its own. The church has posted a large sign on the property proclaiming it to be the future site of their main place of worship. No steps have been taken towards construction, but the church has engaged two architects to develop a site plan for the property.

While the tenants in the homes on the property and St. Andrew have always been on the best of terms, they are still considered to be tenants even though there appears to be an understanding that, with permission of the tenants, the parishioners could come upon the property and use those portions unoccupied by the renters. One of the tenants permitted St. Andrew to store chairs, tables, signs, and other items in the basement. The field on the side of these houses is used by St. Andrew

for recreational purposes about once a year. On two occasions, the church has held an annual church picnic on the property. And while there have been no improvements or permanent structures erected by St. Andrew, a cross and bench were erected on a small portion of the property with permission of the tenants. This area is used for meditation by some of the parishioners.

The Jessamine County Property Valuation Administrator (PVA) assessed the property for the 2003 and 2004 tax years at $630,000.00. St. Andrew appealed this assessment to the Jessamine County Board of Assessment and Appeals, claiming exemption under Section 170 of the Kentucky Constitution. The Board denied the request.

St. Andrew then appealed to the Kentucky Board of Tax Appeals (KBTA). That appeal was also rejected. The Jessamine Circuit Court, however, concluded that the assessment should be apportioned according to the occupants. In a well-reasoned nine page opinion, it held that the part occupied by the renters would be taxed and the part occupied by the church would be exempt. The trial court analogized this method to farm property, where the assessment is apportioned between the land and the improvements.

The Court of Appeals, however, reversed in part, holding that the entire property should be exempt under Section 170. In doing so, the Court of Appeals relied on Kentucky Attorney General Opinion (OAG) 91–216, which stated that the requirement for the church to occupy the property does not mean strictly for religious purposes or that the property is occupied exclusively by the church and that future occupation could be satisfactory.

We must first determine if the circuit court acted within its appropriate role as a

reviewing court in reversing in part the decision of the KBTA. We find that the circuit court acted appropriately.

 Appeals to the circuit court from the KBTA are governed by KRS 131.370. The court is not to substitute its own judgment as to questions of fact, but may either affirm the final order of the KBTA, or reverse it, in whole or in part. KRS 13B.150(2). The reviewing court acts within its authority in reversing the KBTA if it finds the order is in violation of "constitutional or statutory provisions." KRS 13B.150(2)(a). "[A]n erroneous interpretation or application of the law is reviewable by the court which is not bound by an erroneous administrative interpretation[.]" *Camera Ctr., Inc. v. Revenue Cabinet,* 34 S.W.3d 39, 41 (Ky.2000). *See also Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* 983 S.W.2d 488, 490 (Ky.1998). Therefore, the reviewing circuit court below was clearly acting within its jurisdiction by placing a different interpretation of the constitutional provision at issue here.

In addition, by the trial court citing "overwhelming proof" to support its decision, it can be inferred that the trial court was holding that the KBTA's decision was "without support of substantial evidence on the whole record." KRS 13B.150(2)(c). This gives further authority for the trial court to take what measures it did. Therefore, we find that the trial court was within its reviewing authority by reversing in part the final order of the KBTA. We review the decision of the trial court and the Court of Appeals *de novo. Bob Hook v. Transp. Cabinet, id.*

 This case comes to us squarely in order to interpret the "owned and occupied" provision of Section 170 of our state Constitution. In interpreting our Constitution, we must give words their plain and ordinary meanings. *Crick v. Rash,* 190 Ky. 820, 229 S.W. 63 (1921). The trial court afforded the term "owned and occupied" its plain meaning. The language does not say "to be occupied," which would clearly indicate that it was not the intention of the framers of this constitutional provision that it be applied to any property which is not currently occupied. The mixed use of the subject property—private rentals and church use—precludes the treatment of it for tax purposes as being either all or nothing. The residences on the property are not being occupied by the church simply because the rental monies go to its building fund.

None of the tenants were members of St. Andrew. The form leases executed by the church basically imposed upon the tenants the same duties as ordinary tenants which have been contracted in the private and commercial mainstream between landlords and tenants. The leases included the duty of the tenants to "keep that part of the premises and yards that they occupy in a safe, sanitary, and clean condition at all times." It simply defies reality and the plain meaning of the constitutional provision to conclude that the church "occupied" the houses on the subject property. This property is occupied by tenants who pay rent to the church.

St. Andrew cites Ky. OAG 91–216 in support of its position. The opinions of the Attorney General are advisory only and not substantial authority as to the decision this Court must make. *Medley v. Board of Educ., Shelby County,* 168 S.W.3d 398, 402 (Ky.App.2004). Furthermore, the Attorney General's opinion states that the constitutional provision would provide exemption to that property owned but intended for future occupation. Such logic does not only violate the plain meaning of the constitutional language, but strains the rationale to the breaking point. As the trial court points out, to adopt this

type of interpretation would extend the exemption to property owned by the church and rented as commercial real estate, including shopping centers and other commercial enterprises. It would even allow churches to compete in commercial land speculation.

 The issue as to whether the church occupies the remaining acreage outside the two residential units is more problematic. Considering the use of the remaining property, we cannot find that the decisions of either the trial court or the Court of Appeals granting the exemption were clearly erroneous or unsupported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998). While the evidence does not indicate a continuous use of these grounds by St. Andrew, it does support the finding of the trial court as to periodic use, such as horseshoe pitching, volleyball, softball, and tugs of war during the occasional outings by the church membership. There is also a portion used as a prayer and meditation area, including a bench and a large wooden cross. In essence, the congregation has used this property like a park, although not on either a daily or weekly basis. However, it would seem that it has been utilized by St. Andrew with the same frequency as many, if not most, churches use outdoor land that adjoins their main sanctuaries.

Therefore, we find that substantial evidence supports the findings by the trial court that the land owned by St. Andrew, but not occupied by the tenants, is, in fact, occupied by the church for purposes of Section 170 of the Kentucky Constitution.

We are without the benefit of any judicial treatment of the "owned and occupied" phrase of the relatively recent provision of Section 170 of the Kentucky Constitution. We, therefore, tread cautiously in giving full meaning to the term "occupied." Ac-

cordingly, our ruling here today in defining this term is restricted to "institutions of religion" and other entities qualifying for tax exemption under Section 170 of our state Constitution. In other words, we interpret the meaning of "occupied" in the strict context of this constitutional provision, and it should not be interpreted as applying to what significance the word may have in dealing with other legal issues which may arise.

In keeping with this endeavor, we recognize that churches are unique. For the most part, they are never "occupied" in the conventional sense. A vast majority of properties owned by "institutions of religion" such as churches, mosques, tabernacles, temples, and the like, are used for places of worship at specified times and may remain vacant for substantial periods during the week. We further recognize that adjacent facilities, such as activity buildings, gymnasiums, even shelters, may be owned by religious institutions, but perhaps utilized irregularly on an as needed basis. School buildings owned by religious institutions may, in fact, sit idle for a great deal of time. This would not preclude these buildings from being "occupied" under Section 170 of Kentucky's Constitution. It is precisely for these reasons that we find that the trial court's findings were supported substantially by the evidence in this case as to the property not being rented out as residences.

For all of the above stated reasons, we affirm in part and reverse in part the Court of Appeals, vacating the reversal of the trial court's order and judgment and direct that the same be reinstated.

All sitting. All concur.