OPINION OF THE COURT BY JUSTICE HUGHES
*832 Section 170 of the Kentucky Constitution provides in part that "[t]here shall be exempt from taxation ... institutions of purely public charity." This case requires us once again to consider the scope of this "public charity" exemption, and more specifically to decide whether it relieves a qualifying charitable institution from the use tax imposed by Kentucky Revised Statute (KRS) 139.310. The Finance and Administration Cabinet's Department of Revenue (the Department), the Board of Tax Appeals, and the Franklin Circuit Court all concluded the § 170 constitutional exemption speaks only to ad valorem (property) taxes, but the Court of Appeals disagreed. We granted the Department's motion for discretionary review, and for the following reasons hold the Department, the Board of Tax Appeals, and the circuit court correctly concluded that Ky. Const. § 170 does not exempt a "public charity" institution from the use tax imposed by KRS 139.310.
RELEVANT FACTS
According to the parties' stipulation, the taxpayer in this case, Tri-State Healthcare Laundry, Inc., is a joint-cooperative laundry association located in Edgewood, Kenton County, Kentucky. Tri-State was formed by, is owned by, and serves the laundry needs of three charitable hospitals in the Kenton County/Greater Cincinnati metropolitan area. For reasons not included in the stipulation or otherwise explained, Tri-State is not registered with the Internal Revenue Service as an I.R.C. (Internal Revenue Code) § 501(c)(3) corporation and does not qualify for a charitable exemption from the federal income tax.[1] Because Tri-State is not a § 501(c)(3) organization, it does not qualify for the exemption from sales and use taxes provided to local non-profits under KRS 139.495. Nor does it otherwise qualify for any of the specific sales and use tax exemptions provided in KRS 139.470(1) - (23). Since 1998, however, the Department and its predecessors have deemed Tri-State an "institution of purely public charity" under Ky. Const. § 170 and have accordingly exempted it from ad valorem taxation. Relying on this state-recognized "public charity" status, Tri-State now seeks exemption from the Kentucky use tax for its natural gas purchases.[2]
Tri-State uses natural gas in the operation of its laundry business, and during the period pertinent to this case, it obtained that gas from Appellee Interstate Gas Supply, Inc. (IGS), an Ohio corporation headquartered in Dublin, Ohio, IGS's business includes the retail sale of natural gas *833 to customers in northern Kentucky, such as Tri-State, and it has duly registered the Kentucky portion of its business with the Department, KRS 139.340 and 139.390. In accord with KRS 139.340, IGS collects use taxes on its natural gas sales to Kentuckians and remits the taxes to the Department.
This case began in October 2009 when IGS (the tax collector and remitter) applied to the Department on behalf of Tri-State (the taxpayer) for a refund of all Kentucky use taxes Tri-State paid through IGS from September 1, 2005 to August 31, 2009, a sum exceeding $99,000, plus the appropriate interest. In support of their refund claim, IGS and Tri-State advanced two theories. First, they maintained that Tri-State's recognized status as an "institution of purely public charity" exempted it under § 170 from all revenue-raising taxes (use tax included), not just ad valorem taxes. Second, citing Commonwealth ex rel. Luckett v. City of Elizabethtown, 435 S.W.2d 78 (Ky. 1968), they maintained that the use tax, regardless of its name and the fact that use taxes are usually viewed as excise taxes rather than property taxes, operates so like a property tax as to bring it within the § 170 charitable institution exemption even if that constitutional provision applies only to property taxes.
In its August 2010 Final Ruling, the Department denied the IGS/Tri-State refund claim and explained that in its view, even though Tri-State has been deemed a "purely public charity" for the purposes of § 170, both theories advanced by the claimants have been rejected. The Department reasoned that this Court explicitly rejected the first theory and implicitly rejected the second theory in Children's Psych. Hosp. of N. Kentucky, Inc. v. Revenue Cabinet, 989 S.W.2d 583 (Ky. 1999). In that case, the Court held that the § 170 exemption for institutions of purely public charity was addressed to ad valorem taxes only and so did not apply to the 1994 "Healthcare Provider Tax" on the state's hospitals. This holding, in the Department's view, amounted to an explicit rejection of the claimants' theory that Tri-State is exempt from all revenue-raising taxes, and was implicitly a rejection of the ruling in City of Elizabethtown that § 170 exemptions could extend to use taxes. Even if City of Elizabethtown remained viable after Children's Psych. Hosp., the Department further explained, the City of Elizabethtown case was distinguishable in that it concerned a different § 170 exemption, i.e., not the "public charity" exemption at issue here, but rather the exemption for "public property used for public purposes."[3]
Undeterred, IGS and Tri-State appealed the Department's ruling to the Kentucky Board of Tax Appeals. They relied on the same two theories the Department rejected and, for essentially the same reasons, the Board rejected them as well. Likewise, the Franklin Circuit Court, upon review of the Board's decision, concluded that under Children's Psych. Hosp. , the § 170 exemption for public charities "only exempts institutions of purely public charity from the payment of property taxes. Since the use tax is not a property tax, the exemption does not apply."
In the Court of Appeals, the claimants' perseverance finally paid off. Although the appellate panel concluded that Children's Psych. Hosp. had undone an eighty-year-old *834 construction of the constitutional exemption for "public charities"[4] by confining that exemption to property taxes, it found merit in the claimants' alternative theory. Having discussed City of Elizabethtown, the panel noted that "[t]he current law in Kentucky [as expressed in City of Elizabethtown ] is that the use tax imposed under KRS 139.310 is similar enough to an ad valorem tax to render its enforcement on governmental entities unconstitutional under Section 170." The panel saw no reason "why the rule should be applied differently with respect to institutions of purely public charity." Finding that Tri-State had, in effect, been taxed in violation of § 170, the Court of Appeals reversed the circuit court.
We granted the Department's motion for discretionary review to consider the viability and scope of City of Elizabethtown. Not surprisingly, IGS and Tri-State have asked, as an alternative ground of affirmance, that we also consider the viability and scope of Children's Psych. Hosp. The issues having been presented as pure questions of law arising from stipulated facts, our standard of review is de novo. Freeman v. St. Andrew Orthodox Church, Inc., 294 S.W.3d 425 (Ky. 2009). We begin our analysis with consideration of the specific tax at issue, namely the use tax.
ANALYSIS
I. Section 170 of the Kentucky Constitution Provides for Exemptions from Property Taxes Only
A. The Kentucky Use Tax
Use taxes are commonly imposed in conjunction with sales taxes and are intended to counteract any incentive the sales tax might give to local consumers to shop in another jurisdiction where the sales tax is less or non-existent. See Henneford v. Silas Mason Co., 300 U.S. 577, 579-81, 57 S.Ct. 524, 81 L.Ed. 814 (1937) (describing the then sales/use tax regime of Washington State). In very general terms, use taxes achieve that purpose in two steps. The first step is the imposition of a broad tax, at the sales tax rate, on the "use of" or the "privilege of using" within the taxing jurisdiction tangible personal property purchased anywhere. That liability falls on the "user" of the property. The sweeping liability thus created is then just as dramatically narrowed in the second step, by provisions that give use tax credit (or exemption) for sales tax already paid, within the jurisdiction or without, on the subject property. The upshot is a tax supplemental to the retail sales tax on personal property used-for consumption, not for resale-inside the jurisdiction even though purchased outside it. See Nat'l Geographic Soc. v. California Bd. of Equalization, 430 U.S. 551, 555, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977) (addressing aspects of California's then version of the regime and noting that, generally, "States that impose sales taxes also impose a corollary use tax on tangible property bought out of State to protect sales tax revenues and put local retailers subject to the sales tax on a competitive parity with out-of-state retailers exempt from the sales tax.").[5]
*835 Kentucky's statutes fit this pattern.[6] "The sales and use tax laws are integrated elements of a taxing program that is designed to reach all transactions in which tangible property is sold inside or outside of Kentucky for storage, use, or consumption within Kentucky." Revenue Cabinet v. Lazarus, Inc., 49 S.W.3d 172, 175 (Ky. 2001) (citing Genex/London, Inc. v. Ky. Bd. of Tax Appeals , 622 S.W.2d 499, 506 (Ky. 1981) ). The use tax is "a backstop to the sales tax because it ensures that transactions in other states are treated just as if they had taken place in this state and been subjected to the sales tax." Lazarus, 49 S.W.3d at 175 (citing Commonwealth ex rel. Ross v. Lee's Ford Dock, Inc., 551 S.W.2d 236 (Ky. 1977) ). Sales and use taxes generally are classified as excise taxes because they are "not a burden laid directly upon persons or property" but rather charges imposed on the sale and/or use of goods to raise revenue. State Tax Comm'n v. Hughes Drug Co., 219 Ky. 432, 293 S.W. 944, 945 (1927).
When this case arose, in late 2009, KRS 139.200 imposed "upon all retailers" a tax-the general sales tax-"at the rate of six percent (6%) of the gross receipts derived from" retail sales of tangible personal property and digital property, and from the furnishing of certain services. KRS 139.310 imposed "an excise tax"-the use tax (step one from above)-on "the storage, use, or other consumption in this state of tangible personal property and digital property purchased for storage, use, or other consumption in this state at the rate of six percent (6%) of the sales price of the property." "Every person storing, using or otherwise consuming in this state tangible personal property or digital property purchased from a retailer is liable for the use tax levied under KRS 139.310." KRS 139.330. KRS 139.500 and KRS 139.510 then (step two) exempted from the use tax any property which had been subjected to sales tax, either in Kentucky[7] or in another state (to the extent of that tax, up to the six percent Kentucky rate), provided that the other state grants a similar credit for sales taxes paid in Kentucky.[8]
Generalized sales taxes, such as this, with their complementary use taxes, first *836 became widespread in the 1930s, a depression-era response to reduced state revenues. Pomp, supra, at 1125. Kentucky appears briefly to have joined that trend, with the enactment of a general sales tax in 1934, but that tax was repealed at the General Assembly's next session, in 1936, and the state reverted to the former practice of imposing sales and use taxes only on a few specified articles. Our current general sales and use tax regime was not enacted until 1960. See George v. Scent, 346 S.W.2d 784, 787 (Ky. 1961) (noting this development). With that understanding of the tax at issue, our focus turns to the Kentucky Constitution and the section on which IGS/Tri-State premise an exemption claim.
B. Section 170 of the Kentucky Constitution
Section 170 emanated from the 1890 Constitution Convention and had no counterpart in the three earlier Kentucky Constitutions. The section has been amended six times since its adoption in 1891, all revisions occurring after 1955 and none having any relevance to the portion of § 170 on which IGS/Tri-State relies. The section now provides in substantial part as follows, with original language since omitted in brackets and revisions from 1955 forward reflected by underlining:
There shall be exempt from taxation public property used for public purposes; [places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country;] places of burial not held for private or corporate profit; real property owned and occupied by, and personal property both tangible and intangible owned by, institutions of religion; institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education, public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; [all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto;] household goods [and other personal property] of a person [with a family, not exceeding two hundred and fifty dollars in value;] used in his home; crops grown in the year in which the assessment is made, and in the hands of the producer; [and all laws exempting or commuting property from taxation other than the property above mentioned shall be void.] and real property maintained as the permanent residence of the owner, who is sixty-five years of age or older, or is classified as totally disabled under a program authorized or administered by an agency of the United States government or by any retirement system either within or without the Commonwealth of Kentucky.... The real property may be held by legal or equitable title, by the entireties, jointly, in common, as a condominium, or indirectly by the stock ownership or membership representing the owner's or member's proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight years. The exemptions shall apply only to the value of the real property assessable to the owner or, in case of ownership through stock or membership in a corporation, the value of the proportion which his interest in the corporation bears to the assessed value of the property. The General Assembly *837 may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location. Notwithstanding the provisions of Sections 3, 172, and 174 of this Constitution to the contrary, provide by law an exemption for all or any portion of the property tax for any class of personal property.
The section, on its face, is replete with references to property, both real and personal, including residences, places of burial and crops. Section 170 precedes § 171 authorizing the state property tax with provisions regarding classification and uniformity; § 172 requiring property to be assessed at fair cash value; § 173 providing that misuse of public funds is a felony; § 174 requiring property to be taxed at its value regardless if owned by an individual or corporation; and § 175 prohibiting the Commonwealth from surrendering or suspending the power to tax property.
Through the years, this Court and its predecessor have recognized that § 170 and other sections in that "run" of constitutional provisions address only property (ad valorem) taxes. Referring to the timeframe of the 1890 constitutional debates, this Court in Gillis v. Yount, 748 S.W.2d 357, 358 (Ky. 1988), with Justice Leibson writing for the majority, noted: "The primary source of tax revenue at the time was property taxes, and this is where the problems with unfairness were perceived, so these constitutional limitations, covered principally in Kentucky Constitution Sections 170 - 175, deal only with the power to tax property, or ad valorem taxes." (emphasis in original). This conclusion was by no means unprecedented. See, e.g., City of Louisville v. Cromwell, 233 Ky. 828, 27 S.W.2d 377, 378 (1930) ("Independently of any prior interpretation of section 170 of our constitution, its language and that of its sections 171, 172, and 174 would appear to exclusively deal with only ad valorem taxes...."); Reynolds Metal Co. v. Martin, 269 Ky. 378, 107 S.W.2d 251, 259 (Ky. 1937) ("[A]n income tax is not a property tax, and so it is not subject to the uniformity provisions of sections 171 and 172 of the Constitution, nor is it governed by the provision as to exemptions in section 170....").
C. The Corbin YMCA Opinion
A century ago, in Corbin Young Men's Christian Ass'n v. Commonwealth, 181 Ky. 384, 205 S.W. 388, 389 (1918) (" Corbin YMCA "), confronted with a YMCA "convicted" of operating a restaurant without a license and fined $60, the Court veered from that view to conclude that "institutions of public charity" were entitled to an exemption from not only their property taxes "but also necessarily [taxes on] all of their legitimate activities that are consistent with and in furtherance of the purposes for which they were organized." The Court based that conclusion on its parsing of Ky. Const. § 170 and two prior decisions, Trustees of Ky. Female Orphan School v. City of Louisville, 100 Ky. 470, 36 S.W. 921(1896) and Commonwealth v. Young Men's Christian Ass'n, 116 Ky. 711, 76 S.W. 522 (1903). Significantly, both of those prior decisions involved property taxes and focused on the scope of the § 170property exemption.
In Trustees of Ky. Female Orphans School, the Court held that rental property in Louisville owned and operated by an orphanage located in Midway was exempt from state, county and municipal property taxes. That Court reasoned that when the section
exempts the "institution" from taxation and no qualifying words are used showing or tending to show that only the property "used" by the institution, or *838 "connected" with the institution, is to be exempt, then the associated entity-the corporate being-with its estate as an entirety, is embraced by the word "institution."
36 S.W. at 925. Similarly, in the 1903 YMCA decision, relying on Trustees, the Court held that for public charities "all their property is exempt from taxation." 76 S.W. at 524. These two early decisions thus stand for the unremarkable proposition that public charities are not subject to property taxes-not the broader exemption from all taxes posited by the Court in Corbin YMCA and characterized (and rejected) in Children's Psych. Hosp. as a "carte blanche exemption." 989 S.W.2d at 585.
Without the support of Trustees or YMCA as supposed precedent, Corbin YMCA rests on the following analysis;
Section 170 of the Constitution very plainly by its terms places quite different limitations upon the extent of exemption from taxation extended to different classes of organizations. It exempts all public "property" used for public purposes. It exempts "places," limited in size, actually used for religious worship. It exempts "places" of burial not held for private or corporate profit. It exempts "institutions" of education not used for gain and the income of which is devoted solely to the cause of education. But it exempts "institutions of purely public charity" without limitations of any kind, except as is implied by the descriptive terms employed; "purely public charity" implying, of course, that the institution could not be used for gain, and that whatever income it enjoyed must be used solely for the cause of charity. It will thus be noticed that the very language employed exempts "property" used for public purposes, religious worship, or for cemeteries, but that it exempts, not the property, but the institutions themselves, which are engaged purely in public charity or education, if not used for gain by any person or corporation.
205 S.W. at 388. In short because the words "property" or "place" did not appear in immediate proximity to the reference to "institutions of purely public charity" or "institutions of education," Corbin YMCA concludes that public charities and educational institutions received exemption from all taxation, while public entities and bodies, religious organizations and cemeteries ("places of burial") were only exempt from property tax pursuant to § 170.
Corbin YMCA's recognition of an exemption from all forms of taxation was referenced in a handful of later cases without examination, cases later identified in the Children's Psych. Hosp. dissent.[9] See , e.g., Cromwell, 27 S.W.2d at 379 (referencing Corbin YMCA as an exception to the limitation of § 170 exemptions to property taxes but concluding that a city was not exempt from gasoline tax); Gray v. Methodist Episcopal Church S., Widows & Orphans Home, 272 Ky. 646, 114 S.W.2d 1141, 1142-43 (1938) (quoting Corbin YMCA as controlling and then turning to whether a charitable home should be exempt from vehicle registration fee and/or use tax; held exempt from use tax but not vehicle registration fee because it was for "police or regulatory purposes");
*839 City of Louisville v. Presbyterian Orphans Home Soc'y, 299 Ky. 566, 186 S.W.2d 194, 198 (1945) ( Corbin YMCA summarized in case finding the income-producing property of nine charitable institutions exempt from property tax). In fact, of the four post- Corbin YMCA cases from this Court's predecessor, only in the Gray case did the Court actually apply the Corbin YMCA holding to relieve a public charity of a non-property tax.[10]
D. The Children's Psychiatric Hospital Opinion
Almost twenty years ago, in Children's Psych. Hosp., this Court had cause to re-examine Corbin YMCA and the concept that "institutions of public charity" had been given a "carte blanche exemption of taxation" in § 170. 989 S.W.2d at 585. That case, as noted above, held that the constitutional tax exemption for public charities applied only to ad valorem taxes and thus did not relieve hospitals from the 1994 "Healthcare Provider Tax." Although Tri-State questions whether the Children's Psych. Hosp. holding was in fact that broad, we cannot read it any other way. The Court plainly stated: "Because the provider tax in question is not a property tax, it is not subject to the structure of the language of Section 170." Id. After examining the Debates preceding the 1891 Constitution, the Court observed: "Clearly, Section 170 only exempts property tax according to the constitutional debates." Id. The Court further noted that in the first publication of the 1891 Constitution as part of a statutory compilation, the 1894 Kentucky Statutes, the title given to the section was "Property exempt-cities may exempt manufactories," further evidence in its view that " Section 170 applies only to ad valorem taxes." Id. at 586. As for Corbin YMCA, the Children's Psych. Hosp. Court deemed it "an aberration," noting that exemptions from taxation have always been disfavored, never "presumed or implied," and that they must be strictly construed with all doubts resolved against the exemption. Id.
The Children's Psych. Hosp. dissent relied largely on Corbin YMCA and its progeny, as well as some pre- Corbin YMCA cases, without acknowledging that few of the cases even involved the issue of subjecting a public charity to a non-property tax.[11] As a rejoinder to the majority's discussion *840 of the Debates of the Constitutional Convention of 1890, the dissent suggested the selected quotes were taken out of context and pointed to a proposed but rejected amendment that would have resulted in § 170 exempting "the property of institutions actually used exclusively for charitable purposes." 989 S.W.2d at 589. While the dissent suggests that rejection of this language establishes the intent to grant public charities a broader exemption encompassing all forms of taxation, it is equally, indeed more, likely that it was only supportive of a broader property exemption, i.e., the proposed amendment would not have allowed income-producing rental property such as that at issue in Trustees of Ky. Female Orphan School to escape property taxation while the language eventually adopted gave a full property exemption to public charities.
Based on our review of the constitutional debates, it is apparent that in 1890-91, when our current Constitution was drafted and adopted, the annual property tax remained the primary source of tax revenue in Kentucky.[12] It is hardly surprising, then, that the drafters, seeking to curb perceived abuses of the General Assembly's tax powers, focused the new constitution's restrictions, as expressed and embodied in §§ 170 - 175, on the property tax. To say, as the Court did in Gillis, 748 S.W.2d at 358, that those Sections of the Constitution "deal only with the power to tax property, or ad valorem taxes," is an entirely accurate statement of the general tenor of the constitutional text and the debates leading up to it. We would add that nothing in the Children's Psych. Hosp. dissent undermines the wisdom of that conclusion, the alluded-to longstanding recognition of a full tax exemption to charitable institutions really consisting of only Corbin YMCA and Gray v. Methodist Episcopal Hospital[13] (and a few cases that never wrestled with the issue). As for the rejected constitutional language, to the extent it informs the issue at all, in our view it is more indicative of an unwillingness to limit the scope of a public charity's property tax exemption.
In sum, we reaffirm the holding in Children's Psych Hosp. that the tax exemption accorded "institutions of purely public charity" in § 170 is limited to property taxes. Accordingly, we turn to IGS/Tri-State's second argument that the use tax operates so like a property tax as to bring it within the § 170 exemption even if that constitutional exemption applies only to property taxes.
II. The City of Elizabethtown's Holding that the § 170 Exemption Applies to the Use Tax is Not Sustainable.
The Court of Appeals accepted IGS/Tri-State's second refund argument, stating: "The current law in Kentucky is that the use tax imposed under KRS 139.310 is similar enough to an ad valorem tax to render its enforcement on governmental entities unconstitutional under Section 170." While this may concededly be one plausible reading of current law, we disagree with the underlying premise, and consider first how this misconception of the use tax crept into Kentucky law.
In 1965, while our general sales and use tax regime was still relatively new, our predecessor Court was asked, in *841 Thomas v. City of Elizabethtown, 403 S.W.2d 269 (Ky. 1966), to construe a use-tax provision-a tax "on the use in this state of every motor vehicle"-with respect to a claim by the City of Elizabethtown. The city claimed that its use of automobiles purchased for municipal purposes should be deemed exempt from the use tax under § 170 's "public property used for public purposes" provision. A prior statutory exemption from the motor vehicle use tax for municipalities had been eliminated in the 1960 revision of KRS Chapters 138 and 139, the "excise taxes" and "sales and use taxes" chapters, leaving the city with only the § 170 argument. In a divided opinion,[14] the Court upheld the city's constitutional claim by finding that the use tax, unlike the sales tax,
is not excised from or by reason of a transaction. Being a tax on the use and enjoyment of property, it is more akin to a tax on the property itself, an ad valorem tax, than it is to a simple excise tax such as the sales tax in the Marcum [v. City of Louisville, 374 S.W.2d 865 (Ky. 1963) ] case and the gasoline tax in the Cromwell case [ City of Louisville v. Cromwell, 233 Ky. 828, 27 S.W.2d 377 (1930) ].[15]
403 S.W.2d at 272.
Thomas was criticized for a number of reasons: as contrary to the general agreement elsewhere that use taxes are excise taxes, not property taxes; as, inconsistent with George v. Scent which accepted the "excise" characterization of the general use tax; and as neglectful of potential ramifications of the "ad valorem" characterization, including the possibility that "when the use tax and the ordinary ad valorem property tax are levied concurrently on an automobile in the year of its purchase, an unconstitutional classification of automobiles may be created." Court of Appeals Review: XVIII, Taxation, 55 Ky. L. J. 444, 450 (1967).
This Court's predecessor acknowledged this criticism shortly thereafter, in 1968, when the Commissioner of Revenue and the City of Elizabethtown once again sought resolution of a use tax dispute. Commonwealth ex rel. Luckett v. City of Elizabethtown, 435 S.W.2d at 78. On the authority of Thomas, the City claimed a § 170"public property" exemption from the general use tax imposed by KRS 139.310, an earlier version of the statute at issue here. Agreeing with the city that Thomas so required, the Board of Tax Appeals and the Franklin Circuit Court upheld the exemption claim.
Before our predecessor Court, the Commissioner maintained that Thomas had been wrongly decided, beginning with its mischaracterization of the use tax as "ad valorem." With respect to the "ad valorem" characterization, the Court conceded its prior mistake. It noted the very broad consensus among courts elsewhere to the effect that use taxes are excise taxes, not property taxes, and so it agreed with the *842 Commissioner that the contrary characterization in Thomas was off the mark and should be corrected. Id. at 79-80.
The Court rejected, however, the Commissioner's further contention that the "excise" characterization was fatal to the city's § 170 exemption claim. Instead, the Court queried whether even as an excise tax, "the incidence of the [use] tax is so similar to an ad valorem tax that by virtue of this fact alone it would be brought under the protection of the Constitution[?]" City of Elizabethtown, 435 S.W.2d at 80. The Court's answer to this query marks the point at which the Department maintains the Court went astray.
The [use] tax, strictly speaking, is not upon the property per se. It is levied upon the transfer presumably for its use, storage or consumption within this state. In theory it would appear from the statute that the tax is in reality a tax upon the right to use property upon which a sales tax has not been paid. Section 170 of the Constitution exempts the city from tax upon "public property used for public purposes." As this tax is a tax upon the use of the property it would seem that if the property is used for public purposes then the incidence of the tax is identical to that of any other ad valorem tax, therefore, even though it be, strictly speaking, an excise tax it would violate the exemption provided by the Constitution because it is in fact a tax upon the use of public property used for public purposes.
Id. The Department contends that the Court here misconstrued-expanded-the § 170"public property" exemption by fudging that exemption's constitutional role as strictly a property tax exemption, and by paying insufficient heed to the use tax's statutory role as a component of the unified sales and use tax scheme. We agree with both propositions.
The Department further notes that the results that this Court seemingly strained to achieve in the two City of Elizabethtown cases, relieving governmental entities from the use tax (but not sales taxes, thereby creating a discrimination in in-state and out-of-state transactions), became irrelevant in 1976 when the General Assembly amended KRS 139.470 to exempt governmental entities, including cities, counties and special districts, from both sales and use taxes. In short, the City of Elizabethtown, 435 S.W.2d at 80, holding that a use tax is an excise tax but nonetheless sufficiently like a property tax to qualify for the § 170 exemption is no longer of any real relevance to public entities. Nevertheless, with § 170 appropriately limited to its historical intent as an exemption from only property taxes, City of Elizabethtown is the sole remaining ground for IGS/Tri-State's claimed entitlement to a use-tax exemption as an "institution of purely public charity." On closer examination, the proposition that the use tax should be deemed a type of property tax does not withstand scrutiny.
The classification of a tax, as determined by how it operates, is significant. There is an important distinction, for example, between revenue-raising taxes and regulatory ones,[16] Comm'rs of Sinking Fund v. Hopson , 613 S.W.2d 621 (Ky. App. 1980) (citing City of Henderson v. Lockett, 157 Ky. 366, 163 S.W. 199 (1914) ), and among *843 revenue-raising taxes there is a constitutional distinction between property taxes and others. In City of Elizabethtown, the Court addressed whether the general use tax should be classified as a property tax or an "excise" tax.
"Excises," in the original sense of the term, our predecessor court noted in State Tax Comm'n v. Hughes Drug Co.,
were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.
293 S.W. at 945 (citation and internal quotation marks omitted).
The Supreme Court of Oklahoma has explained the modem meaning of "excise" as follows:
Generally, taxes in Oklahoma may be categorized as property taxes, income taxes and excise taxes. As already discussed, property taxes are direct taxes on real or personal property based on the value of the property. Income taxes are direct taxes on income for a specific period of time. Excise taxes are indirect taxes on activities, occupations, privileges and consumption, such as the sales, and use taxes. The term "excise tax" is a general term used to distinguish it from a property tax. Whether a tax is a property tax or an excise tax is most often so apparent that there is no room for argument. However, the category of the tax is determined from its operation, and the name of the tax assigned by the taxing authority, i.e. a legislature, is not controlling.
Twin Hills Golf & Country Club, Inc. v. Town of Forest Park, 123 P.3d 5, 8 (Okla. 2005) (holding that a statutory property-tax exemption did not apply to a municipal sales (excise) tax).
When the nature of a tax-excise or property-is not immediately apparent, when the tax occupies a place somewhere near the dividing line, the two types may often be distinguished, the United States Supreme Court has said, by whether the tax has been levied upon the general ownership of property, as opposed to some particular use of the property.
While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct ... this court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise....
Bromley v. McCaughn, 280 U.S. 124, 136, 50 S.Ct. 46, 74 L.Ed. 226 (1929) (citations omitted) (construing and upholding a gift tax as non-direct). See also Henneford, 300 U.S. at 582-83, 57 S.Ct. 524 ("The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership.").
In Metropolis Ferry Co. v. Commonwealth, 225 Ky. 45, 7 S.W.2d 506 (1928), rev'd on other gds by, Helson v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683 (1929), our predecessor Court upheld a use tax on gasoline and rejected a claim "that a tax on the use of property is a tax on the property itself." The Court relied extensively on Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139 (1921), and Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596 (1914), in both of which the Supreme Court addressed *844 challenges to use taxes (on gasoline in Bowman and on foreign-made yachts in Billings ), and treated as settled the characterization of use taxes as excises, the use of property being but one incident of ownership and hence its taxation not amounting to a direct tax on the property.
To be sure, KRS 139.010(33)(a) (2009) defines "[u]se," as including "the exercise of any right or power over tangible personal property or digital property incident to the ownership of that property[.] ..." The definition then continues in subpart (b), however, by providing that
"[u]se" does not include the keeping, retaining, or exercising any right or power over tangible personal property or digital property for the purpose of:
(1) Selling [it] in the regular course of business; or
(2) Subsequently transporting [it] outside the state for use thereafter solely outside the state[.] ...
In other words, notwithstanding the clear intent under subpart (a) that the use tax apply to personal property as generally as does the sales tax, as qualified by subpart (b), the "use" being taxed is far from co-extensive with ownership of the property. It is rather one aspect of ownership-use as a consumer within the state (again, closely approximating the retail sales tax)-and, as discussed above and as virtually universally held, that makes the use tax an excise tax, not a property tax.
Of course, in City of Elizabethtown, the Court did not dispute this. The Court allowed that, technically at least, and for the purposes of the Constitution's uniformity provisions, the KRS 139.310 use tax should be deemed an excise. For the purposes of the "public property" exemption under § 170, however, the Court concluded that the use tax was effectively a property tax and so called the exemption into play. Under City of Elizabethtown, therefore, a tax can be both an excise tax and a property tax, the one or the other depending on which section of the Constitution one has in mind. This characterization of the use tax as simultaneously both an excise tax and a property tax is largely unprecedented and unsupported anywhere else in the country.[17] More importantly, it is simply wrong. The use tax falls, not on the taxpayer's personal property as such, as would a property tax, but only on the property as put to (or intended to be put to) a consumer's use in this state, and then only such property upon which a qualifying sales tax has not been paid-property such as the natural gas Tri-State put to use in its Kenton County laundry. To the extent City of Elizabethtown holds that the use *845 tax is sufficiently like a property tax to allow a taxpayer (public entity or "institution of purely public charity") to claim exemption from it under § 170, the case is hereby overruled.
Recognizing the use tax is purely an excise tax and therefore beyond the scope of § 170 of the Kentucky Constitution comports with the reality of what the use tax is, i.e., a complementary tax to the sales tax. Lazarus, 49 S.W.3d at 175 ("The sales and use tax laws are integrated elements of a taxing program that is designed to reach all transactions in which tangible property is sold inside or outside of Kentucky for storage, use, or consumption within Kentucky."). It further reflects respect for the universally-recognized rule, applied by both this Court and its predecessor, that exemptions from taxation are to be strictly construed. See also, Cromwell, 27 S.W.2d at 379 (The "rule of strict construction [is] applicable to rights of exemption from taxation."); Gray v. Methodist Episcopal Church., 114 S.W.2d at 1143 (Tax exemptions are "to be strictly construed as against the one claiming the exemption."); Hancock v. Prestonsburg Indus. Corp., 365 S.W.3d 199, 201 (Ky. 2012) ("[P]rovisions [such as § 170 ] granting tax exemption must be strictly construed, as it is a well-settled principle that taxation is the rule and exemption the exception.").
CONCLUSION
In sum, the tax exemption granted "institutions of purely public charity" by § 170 of the Kentucky Constitution applies only to property taxes. The use tax at issue is not a property tax nor should it be characterized as sufficiently similar to a property tax to bring it within the ambit of § 170, as the City of Elizabethtown opinion erroneously did. Accordingly, we hereby reverse the decision of the Court of Appeals and reinstate the Judgment of the Franklin Circuit Court finding IGS/Tri-State is not entitled to an exemption from the Kentucky use tax.
All sitting.
All concur.

Each of Tri-State's owner/members-Good Samaritan Hospital, Inc.; St. Elizabeth Medical Center, Inc.; and Bethesda Hospital, Inc.-is a non-profit, § 501(c)(3) organization and enjoys the attendant tax benefits.

KRS 139.470(1) provides an exemption from the use tax for storage, use or consumption of "tangible personal property or digital property which this state is prohibited from taxing under the Constitution or laws of the United States, or under the Constitution of this state[.]"

The pertinent portion of § 170 provides that "[t]here shall be exempt from taxation public property used for public purposes[.]" City of Elizabethtown addressed KRS 139.310 's general use tax as applied to "certain items of equipment [the city of Elizabethtown] purchased outside of the state." 435 S.W.2d at 79.

In the Children's Psych. Hosp. dissent, Justice Cooper insisted the majority was dismissing a long-accepted prior construction of § 170.

These are matters of some moment. One commentator characterizes sales taxes as "the most significant source of tax revenue for state governments in the nation[,]" with the retail sales tax "[t]he most significant form" of taxation in that class. Michael D. Carson, Rethinking the Impact of Sales Taxes on Government Procurement Practices: Unintended Consequences or Good Policy? 62 A.F. L. Rev. 85, 89 (2008) (citing the United States Census Bureau). And with the burgeoning of the internet and the out-of-state trade the internet makes possible, use taxes have assumed, nationally, multi-billion-dollar per year potential. Megan E. Groves, Tolling the Information Superhighway: State Sales and Use Taxation of Electronic Commerce, 13 Harv. J.L. & Tech. 619 (2000) (discussing Commerce Clause obstacles to state sales and use taxation of internet transactions). Richard D. Pomp, Revisiting Miller Brothers, Bellas Hess, and Quill, 65 Am. U. L. Rev. 1115 (2016) (same).

The parties have not alleged any statutory change during the refund period. We confine our view, therefore, to the statutory scheme as it existed at the end of that period, in October 2009. It remains essentially the same today.

"The storage, use, or other consumption in this state of property, the gross receipts from the sale of which are required to be included in the measure of the tax levied under KRS 139.200 is not subject to the use tax." KRS 139.500(1).

The tax levied by KRS 139.310 shall not apply with respect to the storage, use, or other consumption of tangible personal property or digital property in this state upon which a tax substantially identical to the tax levied under KRS 139.200... equal to or greater than the amount of tax imposed by KRS 139.310 has been legally paid in another state.... If the amount of tax paid in another state is not equal to or greater than the amount of tax imposed by KRS 139.310, then the taxpayer shall pay to the department an amount sufficient to make the tax paid in the other state and in this state equal to the amount imposed by KRS 139.310. No credit shall be given under this section for sales taxes paid in another state if that state does not grant credit for sales taxes paid in this state.
KRS 139.510(1).

The dissent in Children's Psych. Hosp. identifies Bd of Ed. of Kenton Co. v. Talbott, 286 Ky. 543, 151 S.W.2d 42 (1941), as one such case but that case only references Corbin YMCA in the dissent for the proposition that public charities enjoy comprehensive tax exemption. In any event, Kenton Co. involved gas taxes assessed against a board of education, not the § 170 public charity exemption.

The Children's Psych. Hosp. dissent also cites two Court of Appeals' cases, neither of which cited Corbin YMCA but both of which assumed without any elaboration that § 170 exempted public charities from all taxes. In Dept. of Rev. v. Central Medical Laboratory, 555 S.W.2d 632 (Ky. App. 1977), the appellate court held that a nonprofit medical lab was exempt from sales and use taxes, citing § 170 without elaboration and two cases that addressed property taxes-cases that were therefore completely distinguishable. Interestingly, the lab was a § 501(c)(3) organization and seemingly would have qualified for sales and use tax exemption (at least post-1976) on that ground without resort to § 170 and property tax cases. In Dept. of Rev. v. Louisville Children's Theater, 565 S.W.2d 643 (Ky. App. 1978), the Court held a theatre organization was exempt from sales tax, relying on § 170 without examination of its scope and two prior cases, both of which again involved property taxes. In short, neither of these cases is at all persuasive that § 170 exempts public charities from all forms of taxation. A third case, which does not cite Corbin YMCA and was not mentioned in Children's Psych. Hosp., is Marcum v. City of Louisville Municipal Housing Comm'n, 374 S.W.2d 865 (Ky. 1963), wherein the Court assumed without discussion that § 170 exempted public charities from all taxes and then proceeded to hold a municipal housing commission exempt from use taxes but not the sales tax, which a utility company could pass on to the commission.

Beyond Corbin YMCA, the only case cited by the dissent from this Court that involved a non-property tax assessed against a public charity was Gray, 114 S.W.2d at 1141. The dissent also mentioned the Court of Appeals' cases cited in fn. 10 infra , neither of which is persuasive, much less binding, for the reasons stated.

As noted infra, the comprehensive sales and use tax statutes did not go into effect until seventy years later in 1960.

See fns. 10 and 11 infra.

Two dissenting Justices stated: "The tax is based on the use of the motor vehicle and the statute says so. It is purely and simply a use tax." 403 S.W.2d at 272.

In Cromwell, the Court held that the § 170"public property" exemption applied only to the ad valorem tax, not to a tax on the use of gasoline within the state. In Marcum, the Court, having discussed some of the differences between sales taxes and use taxes, held that § 170 's "institutions of purely public charity" exemption applied to the new, general use tax provisions, so as to exempt the City of Louisville's Municipal Housing Corporation from use-tax liability, but that the exemption did not apply to the new, general sales tax provisions. Marcum's distinction became irrelevant in 1990 when the legislature modified KRS 139.210(1) to place the legal incidence of the sales tax on the purchaser. 1990 Ky. Acts, ch.137.

In Gray v. Methodist Episcopal Church, the Court recognized the distinction between revenue-raising taxes, such as property and sales/use taxes, and regulatory taxes or fees, such as the license fee for motor vehicle registration at issue there. 114 S.W.2d at 1143-44. Notably, the restaurant license fee addressed twenty years earlier in Corbin YMCA was really an example of the latter, a regulatory fee/tax, although that distinction was never mentioned.

The City of Elizabethtown's take on this question is not without some very limited support elsewhere, although virtually all of that support appears in dissenting opinions. See, e.g., O'Berry v. Mecklenburg County, 198 N.C. 357, 151 S.E. 880, 883 (1930) (noting, in a case concerning the state's attempt to enforce its gasoline use tax against a county, the distinction other courts, including the United States Supreme Court, make between a tax on the use of property and a tax on the property itself, but wondering, before deciding the case on other grounds, whether the legislature could tax the Governor's "use" of the state capitol); Vancouver Oil Co. v. Henneford, 183 Wash. 317, 49 P.2d 14, 19 (1935), dissenting Opinion by Millard, C.J. ("If this [the State of Washington's general use tax] be not a property tax, I cannot understand how any tax can be a property tax if the Legislature desires to designate it an excise tax."). The overwhelmingly majority conclusion, however, is that use taxes of the sort at issue here are excises, not property taxes, and so do not come within constitutional provisions exempting public property from ad valorem taxation. J. P. Massie, What is a Property Tax as distinguished from Excise, License, and Other Taxes? 103 A.L.R. 18 (1936 with updates through October 2017) (particularly the cases concerning gasoline use taxes collected in Section VIII).