**Harry ARTERBURN and Darcus Arterburn, Appellants,**

v.

**FIRST COMMUNITY BANK; Rural Development, f/k/a Farmer's Home Administration; United States Attorney General; Ballard County, Kentucky; and Hon. Mark S. Medlin, Master Commissioner, Appellees.**

No. 2008–CA–002018–MR.

Court of Appeals of Kentucky.

Nov. 20, 2009.

S. Boyd Neely, Jr., Rebecca P. Biehs-lich, Mayfield, KY, for appellant.

L. Lansden King, Todd A. Farmer, Pa-ducah, KY, for appellee, First Community Bank and Rural Development, f/k/a Farm-er's Home Administration.

Mark S. Medlin, La Center, KY, for appellee, Ballard County Master Commis-sioner.

Before ACREE and CLAYTON, Judges; HARRIS,[1] Senior Judge.

### OPINION

CLAYTON, Judge.

Harry Arterburn and his wife, Darcus Arterburn, appeal from the September 23, 2008, order of the Ballard Circuit Court denying their post judgment motion for relief. We affirm the order as it relates to an award of master commissioner fees ex-ceeding $2,500 per parcel withdrawn from sale.

On March 24, 2008, First Community Bank filed a foreclosure complaint against the Arterburns to enforce mortgage liens on six (6) tracts owned by them. The bank also named as defendants, Rural Development (formerly known as Farmer's Home Administration and hereinafter "FHA"), the United States Attorney Gen-eral and Ballard County, Kentucky. The Arterburns did not defend the foreclosure action, and in an amended summary judg-ment, dated June 30, 2008, the court found them in default and granted judgment to First Community Bank in the amount of $330,321.02, plus interest, and to FHA in the amount of $125,699.71, plus interest. The court also ordered the commissioner to sell the farms.

The commissioner published and adver-tised the sale. In preparation for the sale, on July 15, 2008, the court-appointed ap-praisers supplied separate appraisal values for each of the five farms. After receipt of the appraisals, the commissioner circulated a notice that the farm tracts were divisible and would be sold separately. Prior to the sale date (July 24, 2008), however, First Community Bank and the Arterburns reached an agreement canceling the sale. Thereafter, First Community Bank, on July 18, 2008, requested that the commis-sioner cancel the sales. Subsequently, the commissioner sent a written notice of the cancellation request to the court and asked the court for authorization to withdraw the five properties from sale. On July 23, 2008, the court entered this order authoriz-ing the withdrawal of the sale for the five separate and divisible tracts and ordered the commissioner to submit his costs and fees for the five properties.

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Jus-tice pursuant to Section 110(5)(b) of the Ken-tucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Following the court's directive, the commissioner filed the report of costs and fees for each property and incorporated the appraisal and advertisement fees in the reports. On August 18, 2008, the court ordered First Community Bank, in five separate orders of confirmation—one for each tract, to pay the master commissioner's fees and costs, the appraiser's fees and newspaper advertisement cost. On August 20, 2008, the Arterburns filed a motion to alter, amend or vacate the orders of confirmation. They argued that the commissioner had incorrectly calculated the master commissioner's fees for the canceled sales, but they did not contest the appraisers' fees or advertisement costs. The court overruled the motion and later, at the request of the Arterburns, on September 23, 2008, entered findings of fact, conclusions of law and another order overruling the Arterburns' motion. On October 28, 2008, First Community Bank paid the fees after the Arterburns filed an appeal.

The Arterburns argue that the master commissioner incorrectly calculated the fees for the canceled sale in the foreclosure action, and the court erred in approving the recommended fees in its orders. The Administrative Procedures for the Court of Justice (hereinafter "AP"), Part IV, Section 6(2), which sets the fees of the master commissioner for a canceled sale, states as follows:

The fee for each judicial sale shall be as follows; 5% of the first $5,000 of the final bid, or in the case of several lots sold at the same time under the same judgment, 5% of the first $5,000 of the aggregate of the final bids, 2% for the nest [sic] $20,000 of the final bid or bids; 1 1/2% for the next $175,000 of the final bid or bids; and 1/2% for the excess over $200,000 of the final bid or bids. In no case shall the fee be more than $5,000. **If the property is withdrawn from sale, a fee of $100 or not more than 50% of what the sale fee would have been based upon the appraisal value of the property, shall be allowed by the circuit court.** If the sale is not confirmed through no fault of the master commissioner a fee of no more than the sale fee shall be allowed by the circuit court. (Emphasis added).

The Arterburns argue that the sale of the five tracts of land should be considered under the initial sentence of the regulation. The pertinent phrase, upon which they rely is "in the case of several lots sold at the same time under the same judgment[.]" Therefore, it is the Arterburns's contention that, while five farms were sold, they are all part of one tract under one judgment. Furthermore, the Arterburns maintain that the administrative regulations limit the amount of the commissioner's fee to $2,500 for a withdrawn sale that is one-half of the maximum amount allowed for a sale, which as the regulation states is $5,000. And thus, they are asking for the commissioner's fees for the canceled sales of the five tracts to be considered as one sale and limited to $2,500.

Although the commissioner agrees that the issue involves the proper interpretation of this particular administrative regulation, he disagrees as to the Arterburns's proposed interpretation of the regulation. With regard to their interpretation, he believes that question is, more specifically, whether a cap exists for the commissioner's fee with a withdrawn sale similar to the cap for a completed sale. Second, the commissioner disputes the proposition that these five tracts were part of one sale. Instead the commissioner argues that, under the findings of fact by the judge, the sale of these tracts consisted of multiple sales. Thus, we must address the statutory interpretation of the administrative reg-

ulation and determine if this was a single sale or multiple sales of the property.

■■■ Even though the evidence is not disputed, the parties disagree about the appropriate standard of review. As noted, the issue is twofold—whether the commissioner appropriately calculated his fees for submission to the court pursuant to the administrative regulation and whether the sale involved one sale or five separate sales. Thus, we have both a question of law and a question of fact. Questions of law are reviewed anew by this Court. *Hardin County Schools v. Foster*, 40 S.W.3d 865, 868 (Ky.2001). When there are questions of fact, or mixed questions of law and fact, we review the circuit court's decision pursuant to the clearly erroneous standard. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003). Finally, when considering questions of law or mixed questions of fact and law, the reviewing Court has greater latitude to determine whether the findings below were sustained by evidence of probative value. *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116 (Ky. 1991).

■■■ The first issue we will address is whether the case at hand involves one sale or five sales. A summary of the property follows: The FHA held a first mortgage lien on farms designated in the judgments as Parcels 1, 2, and 3. The appraisers determined that Parcel 1 (100 acre tract) and Parcel 2 (9.82 acre tract) were an indivisible farm and appraised them as one unit. This was referred to as Parcel 1. (The appraiser's determination of this factor reduced the original complaint by First Community Bank to foreclose on six tracts of land to five tracts.) The other farm of 160.13 acres was labeled as Parcel 3. With regard to the tracts in which FHA was the priority lienholder, First Community Bank held a second and inferior mortgage. (FHA did not formally appear but the mortgage lien was properly recorded and enforced by the court.) On parcels 4 and 5, First Community Bank held a first mortgage lien. Parcel 4 consisted of an intact 100 acre farm and Parcel 5 consisted of 85.58 acre farm with four separate tracts. With regard to the final parcel, designated as parcel 6 in the supplemental orders of the court, First Community Bank held a first mortgage lien on the 160 acre farm.

Some of the court's findings in its September 23, 2008, order were as follows:

Each tract was given a separate appraisal value.

Each tract originally was to be sold separately.

Each tract was withdrawn individually from sale.

Each tract received a separate commissioner report with separate costs and fees.

Each tract had a separate order confirming the sale withdrawal and a separate set of costs and fees.

No objections were filed on any appraised value of the tracts.

No objections were filed to the July 23, 2008, order which described the properties as divisible and subject to separate sales.

Moreover, other significant factors include that the parcels are not contiguous, are not city building or subdivision lots, and consist of farm land. Given the standard of review regarding findings of fact, which is clearly erroneous, we find no error on the part of the court in devising the transaction to consist of five individual sales and agree with the court's determination that there were multiple sales.

■■■ Having determined that the transaction consisted of multiple sales rather than one sale, we will now analyze the meaning of the administrative regulation's

language regarding withdrawal of a sale. As noted above, we do so *de novo*. The regulatory language at issue is "[i]f the property is withdrawn from sale, a fee of $100 or not more than 50% of what the sale fee would have been based upon the appraisal value of the property, shall be allowed by the circuit court."

In the case at hand, significantly, the Arterburns in the post-confirmation motion did not object to the appraisal or to the advertising costs. Turning to the commissioners fees, without advertisement and appraisers' fees, we note the fees are for parcels 1 and 2, $2,062.50; parcel 3, $2,587.50; parcel 4, $1,837.50; parcel 5, $1,762.50; and parcel 6, $2,347.50. The court, by following the commissioner's recommendation for the fees, did not deviate from the multiplier in AP, Part IV, Section 6(2).

The commissioner applied one-half the standard commissioner fee rates to the undisputed appraisal values. Accordingly, the commissioner calculated his fees for the withdrawn sale of each tract under the first part of AP, Part IV, Section 6(2):

> The fee for each judicial sale shall be as follows; 5% of the first $5,000 of the final bid, or in the case of several lots sold at the same time under the same judgment, 5% of the first $5,000 of the aggregate of the final bids, 2% for the nest [sic] $20,000 of the final bid or bids; 1 1/2% for the next $175,000 of the final bid or bids; and 1/2% for the excess over $200,000 of the final bid or bids. In no case shall the fee be more than $5,000.

Consequently, the commissioner halved the multiplier for a sale and used 2.5 percent for the first $5,000, 1 percent of the next $20,000, 0.75 percent of the appraised balance, plus the standard report fee of $50.

But using this formula does not answer the last remaining question. Does the language of the regulation prohibit a commissioner's fee on a withdrawn sale from being more than $2,500? The last line of the aforementioned cite describing the formula for the commissioner's fee in a sale states that "[i]n no case shall the fee [for a sale] be more than $5,000." Logically, given that the next sentence in the regulation gives directions for a withdrawn sale, "[i]f the property is withdrawn from sale, a fee of $100 or not more than 50% of what the sale fee would have been based upon the appraisal value of the property, shall be allowed by the circuit court[,]" and the fact that the commissioner used the first half of the regulation to determine his fee for the five withdrawn tracts, it makes sense that the fee should not be more than $2,500. Indeed, it is somewhat ludicrous to suggest that a commissioner's fees could be higher for a withdrawn sale than a completed sale, which is possible, should a withdrawn sale's property appraise high enough.

Therefore, we affirm the court's finding that the master commissioner did not err in determining that First National Bank named five (originally six) separate tracts for foreclosure, which resulted ultimately in five withdrawn sales. Second, we determine that the regulation was correctly used in setting the master commissioner fees for the five properties except for parcel 3. Parcel 3, which was set at $2,587.50, will be limited to $2,500 pursuant to AP, Part IV, Section 6(2).

For the foregoing reasons, we affirm in part the September 23, 2008, order of the Ballard Circuit Court, reverse in part, and remand this matter with directions in accordance with this opinion.

ALL CONCUR.