RENDERED: APRIL 28, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0399-MR

BILL DUNN, MCCRACKEN
COUNTY PROPERTY VALUATION
ADMINISTRATOR                                                    APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.        HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 21-CI-00191


SOLOMON FOUNDATION AND
KENTUCKY DEPARTMENT OF
REVENUE                                                          APPELLEES


AND


NO. 2022-CA-0401-MR


DEPARTMENT OF REVENUE AND
BILL DUNN, MCCRACKEN
COUNTY PROPERTY VALUATION
ADMINISTRATOR                                                   APPELLANTS

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.              HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 21-CI-00191


SOLOMON FOUNDATION, INC.                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND EASTON, JUDGES.

EASTON, JUDGE:  This is an appeal of a judicial review of a decision by the Kentucky Board of Tax Appeals ("KBTA").  The ultimate question is whether the tax exemption contained in Section 170 of the Kentucky Constitution for property owned and occupied by institutions of religion requires a property to be both owned and occupied by one institution.  Having determined the circuit court correctly applied the law to this question, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Solomon Foundation ("TSF") is a non-profit entity organized under Colorado law.  It has two member churches, one in Texas and one in Arizona.  Its exclusive purpose is to advance Restoration Movement Christian Churches.  TSF raises funds by various methods with these funds used to assist in financing individual churches.

The IRS[1] has classified TSF under several of its governing statutes. TSF is considered a "church extension fund" as well as an "integrated auxiliary of a church."  The IRS even categorizes TSF as a "public charity."

TSF owns the property at 1200 Jefferson Street in Paducah.  This property had been used for many years as a church by other occupants.  TSF leased this property to The Crossing Church which then subleased it to the current occupants, the Restoration Church and a ministry called Healing Projects.  The lease documents require use consistent with the goals of TSF.

TSF sought an exemption from property tax[2] for the property at 1200 Jefferson Street.  The McCracken County Property Valuation Administrator ("PVA") denied the exemption as did the local board of assessments appeals.  The KBTA reviewed the matter with substantial evidence submitted to it.  The KBTA decided TSF was not a purely public charity under Section 170 but was an institution of religion.  Even though TSF was an institution of religion, the KBTA decided TSF still was not entitled to the exemption because the TSF did not both own and occupy the property at 1200 Jefferson Street.

---

[1] The United States Internal Revenue Service.

[2] Section 170 provides exemption from property or *ad valorem* taxes.  *See Commonwealth v. Interstate Gas Supply, Inc. for Use and Benefit of Tri-State Healthcare Laundry, Inc.*, 554 S.W.3d 831, 832 (Ky. 2018).

TSF filed a petition for judicial review in the McCracken Circuit Court. That court properly limited its review to the record before the KBTA. The circuit court agreed with the KBTA's determination of TSF as an institution of religion but disagreed with the legal conclusion that TSF itself must both own and occupy the property to receive the exemption. Accordingly, the circuit court reversed the KBTA. Both PVA and the Kentucky Department of Revenue ("Revenue") filed appeals to this Court.

STANDARD OF REVIEW

Our review as well as that of the circuit court in its review of an administrative decision is limited by KRS[3] 13B.150. Review is confined to the record before the KBTA. KRS 13B.140(3). *N. Kentucky Mental Health-Mental Retardation Regional Board, Inc. v. Commonwealth, Cabinet for Health and Family Servs.*, 538 S.W.3d 298, 301 (Ky. App. 2017). We and the circuit court must accept the findings of fact made by the KBTA if they are supported by any substantial evidence in its record. As to legal conclusions, we review them *de novo*. *Arterburn v. First Cmty. Bank*, 299 S.W.3d 595, 598 (Ky. App. 2009).

There has been some debate by the parties as to whether the determination of phrases like "institutions of religion" is a mixed question of law and fact. If so, the *de novo* review still applies because it is still ultimately a

---

[3] Kentucky Revised Statutes.

-4-

question of law. When the question is mixed, we have "greater latitude" in evaluating the evidentiary support for the factual component. *Id.* Regardless, when the legal question is one of constitutional interpretation, the review is *de novo*. *Kentucky CATV Ass'n, Inc. v. City of Florence*, 520 S.W.3d 355, 359 (Ky. 2017).

KRS 13B.150(2) permits specified outcomes for a judicial review. The circuit court may affirm or reverse, in whole or in part, and remand for further proceedings. The statute permits reversal when the KBTA decision is contrary to the constitution or otherwise inconsistent with the law. KRS 13B.150(2)(a).

ANALYSIS

We must first review the procedural issue raised by how arguments were advanced by PVA and Revenue. Separate from the ultimate question of whether the tax exemption requires both ownership and occupation by one entity is the status of TSF as an institution of religion. The KBTA determined TSF was an institution of religion but denied the tax exemption because the KBTA concluded the exemption required TSF to both own and occupy the single church property at issue. TSF owned the property but did not occupy it.

Having been denied the exemption, TSF was "aggrieved" by the KBTA decision. TSF then had the right to file this action in the McCracken Circuit Court pursuant to KRS 49.250. Neither PVA nor Revenue was aggrieved

-5-

by the KBTA decision. They suffered no harm in this specific case from the result of the KBTA decision, because they won the overall argument about the tax exemption. *See Brown v. Barkley*, 628 S.W.2d 616, 619-20 (Ky. 1982). *See also Revenue Cabinet, Commonwealth of Ky. v. CSC Oil Co., Inc.*, 851 S.W.2d 497, 503 (Ky. App. 1993).

PVA and Revenue disagreed with the KBTA about a particular factual or legal conclusion reached within the decision. This does not make PVA or Revenue an aggrieved party to seek judicial review of a case it won before the KBTA. To hold otherwise would encourage the seeking of advisory opinions to apply to future disputes. Kentucky courts may not issue advisory opinions. *See Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007).

In a situation where PVA or Revenue had won part of the case and lost part of it, such as some property was determined to be exempt and other property not exempt, then they, like TSF, would have been aggrieved parties and then would be required to file a petition for judicial review within thirty days of the KBTA decision. KRS 13B.140(1); *Commonwealth ex rel. Luckett v. Louisville and Nashville R.R. Co.*, 479 S.W.2d 15, 17 (Ky. 1972).

This case involves only one petition filed by TSF, the only aggrieved party, in the McCracken Circuit Court. As we shall see, PVA's and Revenue's

lack of status as an aggrieved party does not prevent them from asserting arguments about the KBTA decision in this case once TSF filed for review.

Unfortunately, the verb appeal and the noun appeal are often used interchangeably. TSF did appeal (verb) to the circuit court, but this does not transform the proceeding into an appeal (noun), which may have any number of specific and different procedural rules applicable to it. We make this point to emphasize this case involves a judicial review of an administrative decision. The petition filed in the McCracken Circuit Court, regardless of being referred to as an appeal, is a complaint commencing a civil action governed by the Rules of Civil Procedure ("CR").

Under CR 1(2), the civil rules control the judicial review filed in the circuit court unless some provision of the statutes authorizing the proceeding is inconsistent with the civil rules. The civil rules apply as soon as the "appeal" is perfected – when summonses are issued to commence the circuit court action. *See Cabinet for Human Res. v. Holbrook*, 672 S.W.2d 672, 675 (Ky. App. 1984). There are no *inconsistent* provisions in the governing statutes which prevent the application of the general rules of pleading to present claims to the circuit court.

Under the civil rules, it was incumbent on PVA to file an answer to TSF's petition. KRS 13B.160; CR 7.01; *Carnahan v. Yocom*, 526 S.W.2d 301

(Ky. 1975). An answer serves to outline the issues about which the parties disagree as well as admit those matters not disputed. PVA did not file an answer.

The electronic record indicates the filing of an "Answer" in this case, but the actual record contradicts this. What is referred to as an answer is the record of the administrative proceedings filed by the KBTA as required by KRS 13B.140(3). When PVA can only respond to the petition or complaint filed by TSF, as in this case, it has a right to argue alternate grounds to sustain the decision under review, such as TSF was not an institution of religion. *See Brown*, *supra*.

To avoid any unnecessary angst, we hasten to add any procedural failing in this regard does not prevent consideration of the issues raised by PVA and Revenue in the circumstances of this case. There was no motion for default judgment, which is not favored under Kentucky law, the courts preferring to address cases on their merits. *See Dressler v. Barlow*, 729 S.W.2d 464 (Ky. App. 1987). The parties fully argued and reargued the issues before the circuit court, which decided the merits of the case. After the circuit court made its initial decision but before the submission of a motion to alter, amend, or vacate, Revenue sought to intervene and was permitted to do so pursuant to CR 24.

Revenue and PVA are on the same page with respect to TSF as an institution of religion. The issues have been well presented, and we have determined it is best to look at both the phrases "institutions of religion" and

-8-

"owned and occupied" as they interact in Kentucky Constitution Section 170. As such, we will review both determinations. Along the same lines, we will review the decision about TSF not being a purely public charity as TSF asks us to do. We will address this last question first as it will require analysis of a separate component of Section 170.

TSF IS NOT AN INSTITUTION OF PURELY PUBLIC CHARITY

The IRS determination that TSF is a public charity for federal exemption purposes does not govern determinations of Kentucky law. *See Dayton Power and Light Co. v. Dep't of Revenue, Fin. and Admin. Cabinet, Commonwealth*, 405 S.W.3d 527, 530 (Ky. App. 2012). What the federal government may consider a "public charity" does not dictate a determination of the application of the more restrictive language of the Kentucky Constitution, which limits the property tax exemption to a **purely** public charity.

The first case we will discuss also provides a standard which applies throughout this case. TSF has the burden to establish the exemption, and the exemption is to be strictly construed. *Iroquois Post No. 229, Am. Legion, Dep't of Ky. v. City of Louisville*, 309 S.W.2d 353, 355 (Ky. 1958). In *Iroquois*, an American Legion post sought to be exempted from property taxes, claiming it was a "purely public charity" under Section 170.

The court disagreed noting the American Legion is a patriotic organization, which, although non-profit and doing good works, was not solely devoted to the provision of charity to the public. The court stated the framers of the Kentucky Constitution "had in mind an institution that dispenses concrete, practical, objective charity, characterized by things actually done for the relief of the unfortunate and the alleviation of suffering." *Id*.

After *Iroquois*, the Kentucky Supreme Court summarized the law and applied Section 170 cases in *Hancock v. Prestonsburg Industrial Corporation*, 365 S.W.3d 199 (Ky. 2012). The purpose of the organization must be "wholly altruistic" with no other interest being fostered. *Id*. at 201. The prime aim and function of the property owner must be to provide a place where charity is dispensed.

The factual findings[4] of the KBTA underlying the legal question of whether TSF is a purely public charity are supported by substantial evidence. For example, the KBTA found TSF was organized exclusively to advance a religious purpose. In *Iroquois*, the purpose was patriotic. Here it is religious. *See Commonwealth v. Thomas*, 83 S.W. 572 (Ky. 1904) (trust fund maintained to advocate principles of primitive Christianity is not exempt from taxation under

---

[4] The findings of the KBTA are at pages 8-11 of its final order. From pages 11-13, the KBTA entered combined findings of fact and conclusions of law.

Section 170 as a purely public charity). In the absence of solely providing concrete charity to others, neither patriotic nor religious organizations may be categorized as institutions of purely public charity. The KBTA correctly determined the legal question denying the exemption for TSF on this ground.

## TSF IS AN INSTITUTION OF RELIGION

All agree the 1990 amendments to Section 170 of the Kentucky Constitution expanded the exemption with respect to religious institutions. Indeed, the only available legislative history about the 1990 change called the change a "significant expansion."[5] If we are to fully understand the current wording of Section 170 in this context, we should start with a review of the history of Section 170 before the 1990 amendments.

The tax provisions of the 1891 Constitution were presented for debate on January 9, 1891. Delegates at the convention discussed these provisions for twelve days. The small print record[6] of this discussion exceeds 500 pages. Much of the discussion centered on what would become Section 170.

---

[5] Attorney General Memorandum dated March 19, 1990, attached to House Committee on Elections and Constitutional Amendments Minutes of the Seventh Meeting of the 1990 Regular Session.

[6] Volume Two, Debates Constitutional Convention 1890 ("Vol. 2 1890 Debates").

The Chairman[7] of the Committee on Revenue and Taxation introduced the provisions with the following comment on the tax exemptions contained in Section 170:

> On this question, I say personally, and I believe I utter the views of nearly every other member of the Committee, that the more we investigated it the more clearly it appeared to us that all exemptions, other than the property of the Government, were wrong. An exemption is a tax levied on a part of the citizens who have no interest in it, for the benefit of others who have, on the whole State, for the advantage of a favored locality. . . . If for religion, it compels the citizen to give up his money for some doctrine he believes is pernicious and wrong, to support the magnificent and ostentatious churches of the wealthy, while the two or three are gathered together at his own home in humility and poverty.[8]

The first three Kentucky Constitutions did not contain a property tax exemption. But the General Assembly historically had granted such exemptions as a matter of legislation. Another delegate[9] to the convention acknowledged that a failure to continue such a tax exemption as a constitutional protection would doom the offered constitution to rejection by the voters:

> There is no intelligent man on this floor who believes that, if there was a clause adopted by us taxing churches, the Constitution would stand a ghost of a chance even in

---

[7] Delegate P.P. Johnson of Fayette County.

[8] Vol. 2, 1890 Debates at pg. 2382.

[9] W.M. Beckner of Clark County.

the most benighted county in the State. I do not believe there is a county in the State which would vote for a proposition to turn back the hands of time as that would do. The people don't want them taxed, and they are not going to have them taxed.[10]

Eventually, the Convention agreed upon the language of Section 170, which, with respect to places of worship, would remain intact for almost one hundred years. Section 170 originally exempted "places actually used for religious worship." A small acreage attached with the place was included. If the property belonging to a church was rented out for a non-religious purpose, it was not exempt. *Calvary Baptist Church v. Milliken*, 147 S.W. 12, 13 (Ky. 1912) (building used for business and rented dwellings). Significantly, ownership of the places was not the issue; it was the use to which the property was put.

A separate provision within Section 170 exempted a parsonage owned by a religious society and used by a minister as a home. *See Broadway Christian Church v. Commonwealth*, 66 S.W. 32 (Ky. 1902) (parsonage not actually used by the minister of the church was not exempt). The parsonage exemption, unlike the other exemption applied to places of worship, required ownership of the property by a designated category of owner.

During the arguments before the circuit court in this case, counsel suggested the 1990 amendments were in response to the development of larger

---

[10] Vol. 2, 1890 Debates at pg. 2486.

-13-

churches in the 1970s and 1980s. Frustration for PVAs called upon to divide out acreage of church properties for exemption may have contributed. Legislative efforts in the 1970s suggest churches argued generally for a broader exemption. *See* Weber and Olson, *Special Comment, Religious Property Tax Exemption in Kentucky*, 66 KY. L.J. 651, 659-64 (1978). Regardless of the reasons for the 1990 amendments, a review of the history of Section 170 will provide the background, including legal interpretation, the General Assembly would have had available to them when the changes were made.

We have chosen one case to illustrate how Section 170 operated in the context of property used for worship prior to the 1990 amendments. *City of Ashland v. Calvary Protestant Episcopal Church of Ashland*, 278 S.W.2d 708 (Ky. 1955). In *Calvary Protestant*, the church had a building which it used for religious activities. It bought an adjoining building with a plan for expansion. The church built a stairway to connect the buildings. The church used the top two floors of the newly purchased building for activities, such as Sunday school. But the first floor was rented out to a merchant. The rent collected from the merchant was used to retire the debt on the purchased building. *Id*. at 708-09.

The court in *Calvary Protestant* held the portion of the building not used for religious worship was not exempt. Future planning to use the property did

not fit within the exemption. The church had to pay the property tax for that part of the value represented by the first floor used by the merchant. *Id*. at 712.

In its discussion of Section 170, the court distinguished the exemption provided to educational or charitable institutions, explaining the exemption for properties used for religious purposes was more limited by the language used. The exemption for properties owned by educational and charitable "institutions" applied more broadly because there was no requirement to use the property for a specific limited purpose as with church properties. *Id*. at 709-10.

We will return to the implications of the word "institution." At this point, we shift to analysis of the case heavily relied upon by PVA and Revenue. *Mordecai F. Ham Evangelistic Ass'n v. Matthews*, 189 S.W.2d 524 (Ky. 1945).

At the outset, it is important to note *Ham* had nothing to do with the exemption for actual places of worship. The claim was under the separate provision exempting a parsonage owned by a religious society, which, while arguably synonymous with an institution, is not necessarily the same thing, as we will see. Brother Ham wanted his home exempted as a parsonage. *Id.* at 525.

Brother Ham was not affiliated with any denomination. He was a Christian evangelist who traveled to spread the Gospel. He set up a corporation with the word "association" in its name. The corporation owned the house where

Brother Ham lived. All his expenses and income went through the corporate account.

The court addressed the meaning of the phrase religious society recognizing the dispute in the case was "the character of the owner" of the house. *Id*. at 526. In defining a religious society with reference to many cases from other states and other resources, the court defined the phrase: "as being an association or body of communicants or a church usually meeting in some stated place for worship or for instruction, or organized for the accomplishment of religious purposes such as instruction or dissemination of some tenet or particular faith or otherwise furthering its teachings." *Id*. at 527.

After examining the facts of the case, the court in *Ham* concluded "[t]his is a one man organization[.]" *Id*. at 528. "[I]n reality the corporation is but the alter ego of one man." *Id*. at 527. The *Ham* case does not really assist in answering the question of what an institution is as compared with a religious society. They are not exactly synonymous. For this answer, we must look elsewhere.

Section 170 used the word "institution" with reference to other exemptions, specifically for educational and charitable purposes. It is not accidental the 1990 amendments chose to use this established word to apply to religious-based exemptions. We find one case particularly helpful because it was

decided not long after the adoption of the 1890 Constitution and because it involved a trust fund.

In *Commonwealth v. Gray's Trustee*, 74 S.W. 702 (Ky. 1903), the former Court of Appeals defined an "institution" in the context of a trust fund. Ms. Gray created a testamentary trust. The interest earned from the trust was to be used to educate poor children. When back taxes were sought, the court rejected the claim and found the fund was exempt from taxation because it was an educational institution. In so holding, the court defined institution broadly:

> It is not a complete definition to define "institution" as simply a building or a plant or a body corporate. It may be all of these, but, more broadly speaking, it is that which is set up, provided, ordained, established, or set apart for a particular end, especially of a public character or affecting the community. So, when money or other property is set apart, the exclusive use and income of which is to be applied to the cause of education or pedagogy, the property impressed with that character becomes an institution, without regard to the particular form of its investment.

*Id*.

Using ordinary dictionary definitions, the word "institution" is indeed broader than just a building or corporation: "An organization, society, or corporation having a public purpose, as a school, church, bank, hospital, etc." *Institution*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (2014). "Religion" is "[a]ny specific system of belief and worship, often involving a code of ethics and a

-17-

philosophy." *Id.* Without question TSF is a proponent of a religion and is thus religious as meant by Section 170.

The predicate facts found by the KBTA as to TSF being an institution of religion again are supported by the evidence in the record. When we apply the law to the facts found by the KBTA, we agree TSF is an institution of religion. TSF exists to propagate a specific religious doctrine and to financially support this cause. This then leaves only the question of whether Section 170 requires a single institution of religion to both own and occupy the single property otherwise subject to taxation.

## THE PROPERTY NEED NOT BE OWNED AND OCCUPIED BY A SINGLE INSTITUTION OF RELIGION

As we have previously stated, the former exemption for religious use of property was more limited than that provided for educational and purely charitable institutions. This limitation still exists in an altered form. Section 170 no longer limits the property tax exemption to "places actually used for religious worship." Instead, the property must be "occupied" by an institution of religion.

There is no question argued by the parties about the occupation of the property at 1200 Jefferson Street as a church and being occupied by an institution of religion. The argument shifts to the supposed required unity of "owned and occupied" as argued by PVA and Revenue. Unfortunately, there is little law

addressing the religious exemption after the 1990 amendments.  But one case must be evaluated to provide proper context.

In *Freeman v. St. Andrew Orthodox Church, Inc.*, 294 S.W.3d 425 (Ky. 2009), the Kentucky Supreme Court applied the "owned and occupied" language in the current version of Section 170 for the first time.  Significantly, *Freeman* involved a single institution of religion owning separable properties and occupying parts of those properties.  *Freeman* does not provide much guidance on the precise question here, which involves two institutions of religion.  We cannot just assume that because *Freeman* involved a single religious institution as an owner and occupier that such must always be the case.

The St. Andrew Orthodox Church ("St. Andrew") is in Lexington.  St. Andrew planned for a new location.  It bought property consisting of ten acres with two houses on it.  The property was divided into two lots with a house on each.  St. Andrew rented the houses and applied the rent to the retirement of the debt incurred to purchase the property.  The tenants took care of a lawn around their houses, but St. Andrew maintained and used the rest of the acreage essentially as a park for church events, such as an annual picnic.  *Id.* at 426-27.

The court in *Freeman* held the houses and surrounding lawn areas used by the tenants, although owned by St. Andrew, were not occupied by St. Andrew.  As a result, St. Andrew was not exempt for that portion of the property

tax attributable to the leased houses. The rest of the property was maintained and occupied by St. Andrew and thus exempt from property tax. *Id.* at 428-29.

In *Freeman*, the court cited *Crick v. Rash*, 229 S.W. 63 (Ky. 1921). "The rule for the interpretation of Constitutions, as universally applied, is that the language therein is to receive its plain and ordinarily understood meaning by the generality of the people. Constitutions are many times actually, and always in theory, adopted by the people, and their language is presumed to contain the meaning which the people generally attribute to the words employed." *Id.* at 68.

We must look at the meaning of the phrases used with an ordinary understanding of the English language. Section 170 as amended in 1990 starts with the noun "property." This noun is described by two adjectives, "owned and occupied." Clearly, the plain meaning is the property must satisfy both adjectives. The dispute arises from the language "institutions of religion" which follows the preposition "by" thus tying the phrase about the institutions to the phrase about the property.

Even though a plural noun (institutions) is used, PVA and Revenue insist the ownership and occupation of the property must be by one institution of religion. This is not consistent with the plain meaning of the words used. This interpretation intuits that the drafters and the voters who agreed were just recognizing a category with a plural noun rather than allowing a separation of

ownership and occupation so long as both the owner and occupier were institutions of religion.

This is a strained interpretation when the language in Section 170 is read in its entirety. Section 170 contains other provisions which show the drafters understood how to distinguish between a plural noun and a single noun. Later in Section 170, the language refers to "any incorporated city."

When we look at the argument of PVA and Revenue at its core, the real complaint is not about two different institutions of religion; it is about their view that TSF should not be considered an institution of religion. PVA and Revenue were to some extent "stuck" with the argument for unity of ownership and occupation because that was the basis for the KBTA's decision in favor of PVA and Revenue.

Before further addressing the topic of unity of ownership and occupation, we are aware of the limitations on Kentucky Attorney General opinions. They are at best advisory and should not be relied upon as substantial authority. *Freeman*, 294 S.W.3d at 428. Still, we discuss one such opinion because it illustrates an understanding of the prior version of Section 170 and provides insight into what was intended by the 1990 amendments.

In OAG 65-825, two Presbyterian churches had united as a congregation. They had two buildings. They decided to rent one of them to a

Baptist church. The indirect question answered was whether Section 170 required the owner of the property to also be the ones using it as a place of worship. The Attorney General advised the property was exempt.

If we apply this set of circumstances to the newer language in Section 170, we see no different result. The property is owned by one institution of religion and occupied by another institution of religion. The property is "owned and occupied" by "institutions of religion" and therefore is entitled to the tax exemption. If the 1990 amendments were intended to expand the exemption, it would be incongruous to eliminate the understanding that the prior version of Section 170 would have allowed the exemption in these same circumstances.

CONCLUSION

The McCracken Circuit Court correctly applied Section 170 of the Kentucky Constitution in holding as a matter of constitutional law the property owned by TSF and occupied by another institution of religion was exempt from property tax. The order of the McCracken Circuit Court reversing the contrary decision of the KBTA is AFFIRMED.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR BILL DUNN, MCCRACKEN
COUNTY PROPERTY
VALUATION ADMINISTRATOR:

Cody R. Walls
Glenn D. Denton
Paducah, Kentucky

BRIEFS AND ORAL ARGUMENT
FOR THE SOLOMON
FOUNDATION:

Mark A. Loyd, Jr.
Bailey Roese
Stephanie M. Bruns
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR KENTUCKY DEPARTMENT
OF REVENUE:

Bethany Atkins Rice
Douglas M. Dowell
Richard Bertelson, III
Frankfort, Kentucky