RENDERED: MAY 12, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0518-MR

KENTUCKY RETIREMENT
SYSTEMS, NOW KENTUCKY
PUBLIC PENSIONS AUTHORITY                                          APPELLANT

|  | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE THOMAS D. WINGATE, JUDGE |
|  | ACTION NO. 18-CI-00860 |

DEPARTMENT OF PUBLIC
ADVOCACY                                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND EASTON, JUDGES.

EASTON, JUDGE: The Appellant, Kentucky Retirement Systems, now Kentucky

Public Pensions Authority ("KPPA"),[1] seeks relief from the Order of the Franklin

Circuit Court, which reversed the Final Order issued by the Board of Trustees of

---

[1] We will refer to the new name of KPPA even though actions reviewed were taken when the name was Kentucky Retirement Systems.

KPPA (the "Board"). The circuit court concluded the Board erred when it determined the Department of Public Advocacy ("DPA") must pay the actuarial costs associated with a greater than ten percent increase in the salary of one of DPA's former employees for one of the last five years of her employment. Recognizing the substantial financial impact on state agencies should the precedent of this KPPA decision be upheld, the Justice and Public Safety Cabinet and the Cabinet for Health and Family Services collectively filed an amicus brief, for which we granted leave. Upon review, we conclude the Franklin Circuit Court correctly applied the law to undisputed facts, and we affirm.

## FACTUAL AND PROCEDURAL HISTORY

DPA is a participating agency in KPPA. Mary Rafizadeh ("Rafizadeh") was a former, full-time employee of DPA, and was a participant in the pension administered by KPPA. Measuring the last five fiscal years of Rafizadeh's employment requires us to list the preceding year to see the increase complained of by the KPPA, which was for Fiscal Year 2002. Between Fiscal Year 2001 and Fiscal Year 2006 ("FY01-FY06"), Rafizadeh's last years of employment with DPA, Rafizadeh received the following compensation:

| | |
|---|---|
| FY01 | $54,117.38 |
| FY02 | $59,529.12 |
| FY03 | $65,990.10 |
| FY04 | $67,236.72 |
| FY05 | $68,863.80 |
| FY06 | $55,736.19 |

DPA was Rafizadeh's last participating employer with KPPA prior to her retirement in 2016.

On September 23, 2016, KPPA sent a letter and Notice of Pension Spiking Details to DPA, advising that Rafizadeh received an annual increase in her creditable compensation greater than ten percent for one of the last five years of her employment. Specifically, KPPA stated increases in compensation from FY01 to FY02 totaled a greater than ten percent increase. The total increase was 18.1%. KPPA considered this increase to be "pension spiking" as defined by KRS[2] 61.598. KPPA decided DPA, as Rafizadeh's last participating employer, was responsible for paying the additional actuarial costs resulting from this increase, unless DPA could show that such increase was the direct result of a bona fide promotion or career advancement. KPPA determined the actuarial costs to be in the amount of $1,805.67.

In response, DPA submitted an Employer Request for Post-Determination of Bona Fide Promotion or Career Advancement. Attached was a document indicating Rafizadeh received a reallocation, a legislative salary change, and increment increases during FY01 and FY02. On August 30, 2017, KPPA sent DPA its decision. KPPA determined the greater than ten percent increase in

---

[2] Kentucky Revised Statutes.

-3-

creditable compensation for Rafizadeh was not the direct result of a bona fide promotion or career advancement.

DPA then formally requested an administrative hearing to contest the decision that Rafizadeh's pay increase constituted pension spiking. An administrative hearing before a Hearing Officer was held on February 21, 2018. Erwin "Ernie" Lewis ("Lewis") and Sherri Payne ("Payne") testified on behalf of DPA. Other than supporting exhibits for DPA, no other evidence was introduced.

Lewis was the Public Advocate of Kentucky from 1996 to 2008. Early in his tenure, Lewis organized the "Blue Ribbon Group" to fulfill his goal of increasing salaries for DPA employees, whom he described as historically underpaid and subject to "horrific" caseloads. The Blue Ribbon Group was comprised of twenty members from the legislative, executive, and judicial branches of our state government as well as attorneys and other community members. The Blue Ribbon Group compared the salaries of public defenders in Kentucky to the salaries of public defenders in twenty other states.

The Blue Ribbon Group found DPA was the lowest funded group out of all twenty comparable state systems studied, and specifically DPA's employees were the lowest paid employees out of all twenty states. Lewis testified the Blue Ribbon Group determined DPA's employees were deserving of an increase in

compensation considering the comparable education and experience of the employees of the other states.

The Blue Ribbon Group brought its recommendations to Governor Paul Patton for consideration in the Commonwealth's budget. The General Assembly approved a budget increase (basically half of what was sought) for DPA to fund these salary increases. As a result, all attorneys (including Rafizadeh) employed by DPA received an increase in compensation for FY02.

Lewis explained DPA worked with the Personnel Cabinet to properly allocate the salary increases. The salary structure of every attorney with DPA was permanently changed. The resulting salary increases were mostly determined by experience. Rafizadeh was the supervising attorney for DPA's Covington office during FY02, and her salary increase was like other supervising attorneys.

Lewis admitted Rafizadeh was not promoted. Lewis said Rafizadeh also received a five percent pay increase in October of 2001, which was then routine for state employees. Even without this standard five percent increment, the increase resulting from the General Assembly's specific budget provision would have been greater than a ten percent increase.

Payne also testified on behalf of DPA. Payne is the Human Resources Branch Manager for DPA. Payne explained that the term "reallocation" means a certain job position is better classified as another position. A reallocated employee

receives a pay increase if the new classification is at a higher grade. Reallocations do not require additional training and are not considered promotions. Rafizadeh was reallocated to a higher classification and pay grade. The Personnel Cabinet directs reallocations, and DPA has no control over them. Once a position is reallocated, all the employees in that position are reallocated, not specific employees.

Following the hearing, both sides filed briefs. The Hearing Officer issued a Recommended Order on June 12, 2018. The Recommended Order advised the Board to affirm KPPA's decision "that the increase in Ms. Rafizadeh's creditable compensation greater than 10 percent was not due to a bona fide promotion or career advancement." As a result, the Hearing Officer determined DPA owed KPPA $1,805.67 in actuarial costs pursuant to KRS 61.598.

The Board met on July 26, 2018, and issued its Final Order. The Final Order overruled DPA's request for oral arguments and adopted the Hearing Officer's Recommended Order in its entirety. The Board thus denied DPA's Request for Post-Determination of Bona Fide Promotion or Career Advancement, affirming the KPPA's determination.

DPA then appealed the Board's Final Order to the Franklin Circuit Court pursuant to KRS Chapter 13B. The matter was briefed but then held in abeyance pending the outcomes of several cases before the Kentucky Supreme

Court regarding pension spiking.[3]  After rulings were issued in these cases, the parties submitted supplemental briefs.  On April 26, 2022, the circuit court issued its Order ruling the administrative record contained overwhelming evidence that the Board misapplied the law, and that the Board's Final Order was not supported by substantial evidence.  This appeal followed.

## STANDARD OF REVIEW

Upon judicial review, courts defer to agency fact-finding.  *Roach v. Kentucky Parole Board*, 553 S.W.3d 791, 793 (Ky. 2018).  A reviewing court shall not substitute its judgment for that of an agency as to the weight of the evidence on questions of fact.  KRS 13B.150(2).  In *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky. App. 2003), the Court stated:

> When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people.  Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it.

(Citations omitted.)

---

[3] *Jefferson Cnty. Sheriff's Office v. Kentucky Retirement Systems*, 626 S.W.3d 554 (Ky. 2021); *City of Villa Hills v. Kentucky Retirement Systems*, 628 S.W.3d 94 (Ky. 2021); and *Kentucky Retirement Systems v. Jefferson Cnty. Sheriff's Office*, 630 S.W.3d 610 (Ky. 2021).

A reviewing court may reverse and remand an agency's order as to determinations of fact if it finds that the agency's order is arbitrary, capricious, or characterized by abuse of discretion. *Roach*, *supra*, at 793. Agency determinations of law are reviewed *de novo.* *Id.* As we will explain, the question in this case is not about a disputed fact; it depends on undisputed facts which govern the legal question presented. That legal question is whether the undisputed facts constitute a career advancement as intended by KRS 61.598.

We must first differentiate what constitutes a finding of fact compared with a conclusion of law in the Hearing Officer's Recommended Order. The first twelve numbered findings of fact are not disputed, but most of the factual circumstances and reasons for the pay raise are omitted. The remaining findings of fact in the Recommended Order start at number thirteen. For example, "finding" number fifteen of the Recommended Order states, "This change in creditable compensation was not the result of a bona fide promotion or career advancement."

This is not purely a finding of fact. At best, it is a mixed question of fact and law, which we still review *de novo* with proper deference to the factual components found by KPPA. When the question is mixed, we have "greater latitude" in evaluating the evidentiary support for the factual component. *Arterburn v. First Cmty. Bank*, 299 S.W.3d 595, 598 (Ky. App. 2009). Ultimately, whether Rafizadeh's reallocation meets the definition of "bona fide promotion or

career advancement" as defined in KRS 61.598 is a conclusion of law, which is to be reviewed *de novo*. *Kentucky Retirement Systems v. Brown*, 336 S.W.3d 8, 16 (Ky. 2011).

## ANALYSIS

KPPA argues the circuit court erroneously rejected the KPPA's decision that DPA failed to prove Rafizadeh's greater than ten percent increase in creditable compensation was the direct result of a "bona fide promotion or career advancement." The 2013 version of KRS 61.598(2)[4] states, in part:

> For employees retiring on or after January 1, 2014, the last participating employer shall be required to pay for any additional actuarial costs resulting from annual increases in an employee's creditable compensation greater than ten percent (10%) over the employee's last five (5) fiscal years of employment that are not the direct result of a bona fide promotion or career advancement.

The 2013 version of KRS 61.598(1)(a)[5] defines "bona fide promotion or career advancement" as follows:

> [A] professional advancement in substantially the same line of work held by the employee in the four (4) years immediately prior to the final five (5) fiscal years preceding retirement **or** a change in employment position based on the training, skills, education, or expertise of the employee that imposes a significant change in job duties

---

[4] This version of KRS 61.598 was in effect from July 1, 2013, through March 27, 2017. The 2013 version of KRS 61.598(2) is incorporated in the current version as KRS 61.598(5)(a).

[5] The definition of "bona fide promotion or career advancement" remains unchanged under the current version of KRS 61.598(1)(a).

and responsibilities to clearly justify the increased compensation to the member[.]

(Emphasis added.)

The circuit court agreed with DPA that the record compelled a conclusion that Rafizadeh received "a professional advancement in substantially the same line of work as the last four years of employment." The circuit court determined that, when Rafizadeh's position was moved to a higher pay grade, this constituted a professional advancement in substantially the same line of work as the last four years of her employment. The circuit court stated, in part:

> The Court agrees that a move to a new pay grade classification constitutes a professional (career) advancement. Further, the DPA admits that Rafizadeh's professional (career) advancement did not require any significant change in job duties and was not based on training, skills, education or expertise. The Court again agrees with the DPA that a professional (career) advancement does not require a showing that the change in employment position was based on training, skills, education or expertise that imposed a significant change in job duties clearly justifying the pay increase.

KPPA argues the circuit court erred regarding the meaning of the term "professional advancement." Before determining this question, we turn to the decisions for which the parties waited for guidance. Two of the three cases were companions involving the Jefferson County Sheriff's Office. First, we must acknowledge the burden of proof is on the employer to establish a promotion or

career advancement. *Jefferson County Sheriff's Office v. Kentucky Retirement Systems*, 626 S.W.3d 554, 561-62 (Ky. 2021).

In this first case, an employee had taken sick leave for a "bona fide illness." *Id.* at 557. The timing of the employee's return to work caused a more than ten percent total increase in compensation in the following year. *Id.* Technically, this met the wording of the statute, but the Court warned against an "overly mechanical application" of the statute. *Id.* The statute "requires [KPPA] to examine, holistically and substantively, the reasons for a change in compensation." *Id.* at 560. "We find the application of KRS 61.598 in this circumstance erroneous as a matter of law, and that the result was arbitrary." *Id.* at 558.

The second case, rendered on the same day, provided the Court with an opportunity to contrast circumstances within and without the intention of the statute. *Kentucky Retirement Systems v. Jefferson County Sheriff's Office*, 630 S.W.3d 610 (Ky. 2021). The Court explained the statute is called a pension spiking statute because it was "aimed at identifying artificial increases[.]" *Id.* at 613.

The Jefferson County Sheriff's Office implemented an accounting change for pay from "when earned" to "when paid." *Id.* at 615. This led to a barely more than ten percent (10.06%) total increase for the year after this change.

*Id*. at 614.  Like the later paid sick leave in the first case, the move of the payments due to the accounting change appeared as an increase in pay during a specified year, when it in fact was no increase at all.  The Court held this was not within the meaning of the statute.  *Id*. at 617.

The Court then analyzed an increase in pay from overtime hours. Such increase is not the result of any qualitative change in job duties, just more of the same work.  As such, KPPA, based on certain circumstances, **could** decide such an increase is not the result of a promotion or career advancement.  *Id*. at 621. Still, the purpose of the statute indicates "the propriety of looking at the substantial reasons for a pay increase."  *Id*.

The third case is most instructive for the circumstances of the present case.  *City of Villa Hills v. Kentucky Retirement Systems*, 628 S.W.3d 94 (Ky. 2021).  In *Villa Hills*, the Court reminds us about the reason for the statute.  It was enacted in response to "alleged historic mismanagement of the general pension fund[.]"  *Id*. at 109.  To reduce strain on pension finances, the cost of artificial increases by employers which increased pension benefits was shifted to the employer making the increase decision.  *Id.*

In *Villa Hills*, the employer decided to merge two positions.  *Id.* at 99. A police officer was separately employed by contract to do building inspections. *Id.*  The inspector duties were brought "in house."  *Id*.  The officer did the same

-12-

jobs after the change. *Id.* The Court held this was within the intention of the pension spiking statute. *Id.* at 106. But in so doing, the Court again cautioned against a mechanical application of the wording of the statute: "career advancements might take on various forms and manifestations; and the circumstances of each case should be examined, as was done here." *Id.*

Of particular significance for this case, *Villa Hills* recognized the separate nature of a promotion and a career advancement. The Court analyzed the definitions found in KRS 61.598, stating, in part:

> There are two basic ways to find a "bona fide promotion," either (a) in a promotion **or** professional advancement in substantially the same line of work as the last four years of employment, **or** (b) a change in employment position based on training, skills, education, or expertise that imposes a significant change in job duties and responsibilities clearly justifying the pay increase.

*Id.* at 102 (emphasis added). Therefore, a "bona fide promotion" under *Villa Hills* can either be "a promotion or professional advancement" under part (a) of the definition, **or** a significant change in job duties or responsibilities under part (b).

Again, DPA admits Rafizadeh was not promoted. Rafizadeh also did not receive a specific salary increase due to her training, skills, education, or expertise, nor did she receive a significant change in job duties or responsibilities. But the phrase "promotion or professional advancement" under part (a) of the *Villa Hills*' definition of "bona fide promotion" is disjunctive in nature – implying the

-13-

two words are not synonyms. Therefore, a "bona fide promotion" can also be achieved when an employee experiences a professional advancement in substantially the same line of work held by the employee in the four years immediately prior to the final five fiscal years preceding retirement. As a bona fide promotion can be achieved through a professional advancement under part (a) of the definition, it would not require a significant change in job duties or responsibilities under part (b).

As previously detailed, the General Assembly approved a budget increase for DPA. All attorneys employed by DPA (including Rafizadeh) received an increase in compensation. The DPA worked with the Personnel Cabinet to properly allocate the salary increases. The salary structure of every attorney in DPA was permanently changed. The resulting salary increases were mostly determined by experience of those in the new classifications.

As explained in the undisputed testimony, the term "reallocation" means a certain job position is better classified as another position. A reallocated employee receives a pay increase if the new classification is at a higher grade. Rafizadeh's position was reallocated from a lower pay grade to a higher pay grade. The Personnel Cabinet made the reallocations, and DPA ultimately had no control over them. Once a position is reallocated, all the employees in that position are reallocated, not specific employees.

Taking the above into consideration, we agree with the circuit court. Looking at the situation holistically and in these circumstances, the reallocation and move to a new pay grade classification constituted a professional advancement in substantially the same line of work as the last four years of employment.

"Reallocation" is defined as the "correction of the classification of an existing position by placement of the position into the classification that is appropriate for the duties the employee has been and shall continue to perform." KRS 18A.005(29). Employees who have been reallocated are deemed to have "**advanced**" to a higher pay grade. 101 KAR[6] 2:034 § 3(3)(a) (emphasis added). Further, employees who advance to a higher pay grade have salary rights protected in the event of a demotion. In the event of demotion, an employee's salary cannot be reduced by more than five percent per pay grade. 101 KAR 2:034 § 3(2)(a).

Rafizadeh's position was reallocated to a higher classification appropriate for her duties, and she also received a commensurate pay raise. An unexplained pay raise alone might not meet the requirements of a bona fide promotion or career advancement as defined in *Villa Hills*; however, a pay raise to correct chronic underpayment plus a reallocation to a higher classification constitutes a career advancement under the statute in this case. This cannot logically be categorized as "pension spiking."

---

[6] Kentucky Administrative Regulations.

We must take the legislative intent of both KRS 61.598 and the General Assembly's budget increase for DPA salaries into consideration. Legislative intent is paramount when construing a statute. *Martin v. Warrior Coal, LLC*, 617 S.W.3d 391, 394 (Ky. 2021). The intent of the General Assembly in passing the pension spiking statute was to prevent the artificial inflation of salaries right before retirement. The pension system was financially strapped. It was seen as unfair when employers loaded up increases during the final "high five" years of employment further taxing the funding of pensions by the state generally. When such abuses occur, the employer should bear the cost.

The pay increase here was not an abuse. The term "bona fide"[7] implies the raise at issue must not be based on a sham. Rafizadeh was not singularly targeted for a raise immediately before she planned to retire with no justification for the raise. There was no sham involved. Instead, all public defenders were given an overdue raise and reallocation. It would be inconsistent for Rafizadeh's legislatively mandated pay increase to be considered pension spiking just because she left DPA well before she retired, when these same pay increases for persons who did not leave DPA during this timeframe could not be subject to the pension spiking statute.

---

[7] Latin for "good faith."

We also note the Personnel Cabinet has control over reclassifications. In other words, the DPA as the employer did not grant these increases on its own contrasted with what occurred in *Villa Hills* and the other recent cases. It would be unfair for agencies to be assessed with actuarial costs for raises not solely determined by them. Further, assessing agencies with actuarial costs may dissuade employers from providing deserved raises. As the circuit court mentioned in its Order, "It would be disingenuous and against the interest of hiring and retaining state employees to deny them deserved raises because agencies are threated [sic] with actuarial costs when pension spiking was not the intent behind the General Assembly's good natured action to fairly compensate state employees."

KPPA still insists KRS 61.598 has no intent element, and that the lack of spiking intent in increasing Rafizadeh's retirement is irrelevant. But as previously mentioned, the KPPA is required to look to the substance of the reason for a compensation increase. The reason for Rafizadeh's pay increase was that the General Assembly decided to increase the deserved pay leading to a reclassification of DPA's employees to better reflect their duties and responsibilities. The pay increase was not intended to artificially raise Rafizadeh's retirement or that of anyone else.

Each side has argued the interpretation advanced by the other would lead to an absurd result. *Mills v. Department of Correction Offender Information*

*Services*, 438 S.W.3d 328, 334 (Ky. 2014) (cited by KPPA). When statutes are applied, they should not be applied in such a way as to lead to a result the General Assembly could not have intended.

This case involves an executive branch agency of the state government. In this, it is different from *Villa Hills* and the other recent cases. Saddling an employer with an independent budget and its own source of revenue (counties and cities) with the actuarial costs of an artificial pay increase is an appropriate and intended result of KRS 61.598. When state agencies are involved, we are simply arguing over from which "pot" of the same revenue the actuarial costs should be taken. To properly fund the pensions will require the General Assembly to allocate the same amount of funds one way or the other. In these undisputed circumstances, to take back from the chronically underfunded DPA actuarial costs of a long-overdue and deserved adjustment to salaries would be an absurd result not intended by the General Assembly, which directly and purposefully funded the increase.

## CONCLUSION

The circuit court did not err in reversing the Final Order of the Board. Therefore, the Order of the Franklin Circuit Court is AFFIRMED.


ALL CONCUR.


-18-

BRIEFS FOR APPELLANT:

Katherine Rupinen
Frankfort, Kentucky

BRIEF OF *AMICUS CURIAE* FOR
THE JUSTICE AND PUBLIC
SAFETY CABINET AND THE
CABINET FOR HEALTH AND
FAMILY SERVICES:

Peter Dooley
Leah Boggs
LeAnne Applegate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

B. Scott West
Frankfort, Kentucky